**Irene WAGNER and Estate of Francis Wagner, Appellants,**

v.

**John J. SELLINGER, et al., Appellees.**

**No. 99–CV–788.**

District of Columbia Court of Appeals.

Argued Jan. 22, 2004.

Decided April 29, 2004.

---

Christian Camenisch for appellants.

Pamela A. Bresnahan, with whom Steven R. Becker, Washington, was on the brief for appellees.

Before GLICKMAN and WASHINGTON, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Appellant Irene Wagner (and her late husband)[1] brought this case charging legal malpractice by the appellees, John J. Sellinger and the law firm of Paulson, Nace, Norwind & Sellinger, in handling her medical malpractice claim against a hospital and its operating physicians that resulted in her paralysis. The grounds for appeal are the trial court's alleged errors in (1) granting summary judgment for the defendant-appellees on the ground that the statute of limitations had run, and in (2) disqualifying the Wagners' lawyer despite an alleged hardship. Appellees dispute these contentions and argue that Mrs. Wagner must lose in any event because she failed to proffer the expert testimony required to sustain a prima facie case of professional negligence. We rule for Mrs. Wagner on the limitations issue and reverse and remand for further proceedings.

## I.

On October 3, 1990, Mrs. Wagner underwent a six-hour bilateral laminectomy and fusion operation at Georgetown University Medical Center ("Georgetown") performed by Dr. Arthur Kobrine and another physician. As a result, she was paralyzed from the waist down. On June 3, 1992, the Wagners retained attorney John J. Sellinger and his law firm, Paulson, Nace, Norwind & Sellinger, to file suit against Georgetown and Dr. Kobrine.[2] Sellinger did so on March 24, 1993, demanding ten million dollars. He then deposed each doctor for approximately one hour. Later, in the summer of 1994, Sellinger advised the Wagners to settle for $175,000. On July 21, 1994, the Wagners terminated their representation by Sellinger and his firm although Sellinger never formally withdrew his appearance.

On July 31, 1994, the Wagners retained attorney Christian Camenisch. After reviewing the files in August, he opined that Sellinger's discovery efforts had been inadequate. On September 9, in the hope of uncovering more details of the operation, Camenisch filed a motion requesting an opportunity to depose the surgeons a second time. The court denied the motion on October 28, 1994.

On January 4, 1996, the trial court—relying on the statute of limitations—granted defendants' motions to dismiss the Wagners' claim that they had not given the required informed consent to the operation.[3] Seven months later, on August 14, while the defense was presenting its case-in-chief to the jury on the other counts of the complaint, the Wagners learned for the first time that the doctors had used an instrument called a bovie. The Wagners had been proceeding on a theory that Dr. Kobrine had been negligent because he used a three-millimeter rongeur.[4] On August 27, 1996, the jury found no liability and, as a result, awarded the Wagners no damages.

1. Francis Wagner died on April 14, 1999.

2. Mr. Wagner sued for loss of consortium.

3. On March 8, 2001, this court affirmed the dismissal against Dr. Kobrine but reversed the judgment in favor of Georgetown, remanding with instructions that Mrs. Wagner's lack of informed consent claim could proceed against the hospital. *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546 (D.C.2001).

4. *See Wagner*, 768 A.2d at 564–65.

On August 8, 1997, the Wagners, through Mr. Camenisch, filed a complaint for legal malpractice against Sellinger, and against what by then had become his former law firm, alleging failure to conduct adequate discovery. First and second amended complaints were filed, respectively, on August 15 and September 15, 1997. In the second amended complaint, the Wagners alleged that they had terminated the representation because the defendant attorneys had "not only failed to properly prosecute their claims, they vastly compromised and damaged their causes of action, and thereafter demanded plaintiffs settle for $175,000 of which less than $95,000 would have been received by plaintiffs." In her supporting affidavit, Mrs. Wagner stated that "because [she] was so disappointed and disgusted with the efforts of Mr. Sellinger and his law firm in pursuing [her] case, [she] terminated their legal representation."

On February 9, 1998, defendants filed a motion to disqualify Camenisch from further representing the Wagners on the ground that he was a material witness. The trial court granted the motion on March 19, 1998,[5] extended discovery deadlines for sixty days, and stayed the litigation for thirty days or until entry of an appearance by new counsel.[6]

Over a year later, on April 7, 1999, defendants filed a motion for summary judgment alleging that the Wagners' claims were barred by the three-year statute of limitations and that in any event they could not prove professional negligence because they lacked expert testimony. The trial court granted the motion on the first ground on May 13, 1999, ruling that the cause of action had begun to run

the day Mrs. Wagner terminated her relationship with her former counsel, July 21, 1994.

## II.

We review de novo the trial court's grant of summary judgment. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C. 1983). In the District of Columbia, the statute of limitations governing a legal malpractice claim is three years. D.C.Code § 12–301(8) (2001); *Weisberg v. Williams, Connolly & Califano,* 390 A.2d 992, 994 (D.C.1978). In such cases, the discovery rule provides that a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. *Bussineau v. President and Dirs. of Georgetown Coll.,* 518 A.2d 423, 435 (D.C.1986). The statute of limitations will not begin to run until the plaintiff either has actual notice of the cause of action or—given the obligation to discover the discoverable—has "inquiry notice" as of the time a reasonable investigation would have led to actual notice. *Diamond v. Davis,* 680 A.2d 364, 372 (D.C. 1996) (opinion of Ruiz, J.). Thus, the plaintiff need not be fully informed about the injury for the statute to begin running; she need only have *some* knowledge of *some* injury. *Colbert v. Georgetown Univ.,* 641 A.2d 469, 473 (D.C.1994) (en banc) (citing *Knight v. Furlow,* 553 A.2d 1232, 1235 (D.C.1989)). In short, knowledge is deemed sufficient if the plaintiff has reason to suspect that the defendant did something wrong, even if the full extent of the wrongdoing is not yet known. *Morton v. National Med. Enters., Inc.,* 725 A.2d 462, 468–69 (D.C.1999).

---

**5.** Actually, the court inadvertently disqualified defendants' counsel instead of Camenisch. It amended its order to disqualify Camenisch on March 27, 1998.

**6.** Attorney Camenisch represents Mrs. Wagner on appeal because, he explained at oral argument, the trial court's disqualification order did not extend to this court—a question we decline to address.

■ As a modification of the discovery rule this court, for policy reasons, has adopted the "continuous representation rule" under which a legal malpractice claim will not accrue until the representation is terminated, even though the client's knowledge might otherwise have triggered the statute earlier. *R.D.H. Communications, Ltd. v. Winston,* 700 A.2d 766, 768 (D.C.1997). Thus, the earliest date the statute of limitations could have begun to run here was July 21, 1994, when Sellinger and his firm were fired.[7] And this is the date that appellees contend the statute of limitations began to run—three years, two weeks, and four days before the Wagners filed their lawsuit.

■ As the case law requires, appellees' contention is premised on Mrs. Wagner's having "inquiry notice" based at least on a "reasonable suspicion" that the appellees had done "something wrong" by July 21, 1994. That said, all of the case-law formulations that allow the statute of limitations to commence running based on an attenuated idea of notice, rather than on actual knowledge, presuppose notice of an actual injury—an injury that has occurred—not merely a speculative wrong. If there is no injury, even the strongest belief that the defendant has caused the plaintiff real harm will not transmute that belief into a reality for limitations purposes.

■ This proposition becomes self-evident when one takes time to recognize that a statute of limitations cannot begin to run until the first day on which discovery will show that the plaintiff had a bona fide lawsuit based on injury, meaning a legally cognizable claim that would survive a motion to dismiss. Absent injury, there is no lawsuit. *See Fort Myers Seafood Packers, Inc. v. Steptoe & Johnson,* 381 F.2d 261, 262 (D.C.Cir.1967) (adopting rule that malpractice claim accrues when actual injury occurs, not when acts causing injury occur); *accord Weisberg,* 390 A.2d at 994–95. With this understanding, Mrs. Wagner contends that she was not injured until she lost her medical malpractice trial on August 27, 1996. Accordingly, she says, the statute of limitations did not begin to run until that time, well within the three-year limitations period for her legal malpractice suit filed less than a year later on August 8, 1997.

■ So when was Mrs. Wagner injured? Appellees reference her second amended complaint, in which she said that she had terminated all representation by Sellinger and his firm on July 21, 1994 because they had "not only failed to properly prosecute" the Wagners' claims but also had "vastly compromised and damaged their causes of action," and thereafter had demanded that plaintiffs "settle for $175,000." Mrs. Wagner's affidavit dated March 30, 1998 added that she had "terminated their legal representation" on July 21, 1994 because she and her husband had been "disappointed and disgusted" with their lawyers' efforts. And in a pro se "motion for immediate hearing for continuance of discovery" filed on July 25, 1994, four days after firing their lawyers, the Wagners represented that "prospective counsel" had "cited inadequacy of legal representation thus far in behalf of Plaintiffs...."[8] Finally, Mrs.

7. The Wagners contend that there is a question of fact as to when Sellinger was terminated, suggesting it was later than July 21. That contention has no merit. Mrs. Wagner stated in her second amended complaint that she terminated the relationship "on or about July 21, 1994." She retained Mr. Camenisch on July 31, 1994. Despite Sellinger's failure to withdraw his appearance, the record makes clear that he did not continue to serve as Mrs. Wagner's counsel after July 21, 1994.

8. This July 25, 1994 motion was not part of the record originally filed on appeal, but Mrs.

Wagner's counsel at oral argument on appeal acknowledged that, once Sellinger had tried to force a settlement, "a red flag went up."

Appellees rely on these pleadings, if not as hard evidence, at least as admissions of injury as of July 21, 1994—in legal effect an estoppel to claim otherwise. We cannot agree. The statements in the second amended complaint and affidavit, filed respectively in 1997 and 1998, that appellees had "vastly compromised and damaged" the Wagners' claims, as evidenced by the recommended settlement of $175,000, and that the Wagners had terminated the legal representation out of disappointment and disgust, did not necessarily reflect an injury that accrued as early as July 21, 1994. Nor, in their affidavit of July 24, 1994, did the Wagners' recognition of the "inadequacy of legal representation" necessarily reflect actual, rather than potential, injury. In short, even if actual injury could be established by admission and estoppel—an issue we do not decide—appellees have not pointed to any admission of record that could trigger commencement of the limitations period as early as July 21, 1994.

As we understand the record, the Wagners concluded by July 21, 1994 that they were receiving such poor legal representation from Sellinger and his firm that unless they were replaced the Wagners' claim was likely to fail. Implicitly, however, the Wagners still had hope, however faint, that matters could be turned around, especially if successor counsel could reopen discovery. But even more to the point, had the Wagners sued Sellinger and his firm on July 21, 1994, there was no way to articulate any injury that could yield ascertainable damages. *See, e.g., Fort Myers Seafood Packers,* 381 F.2d at 262; *Knight,* 553 A.2d at 1235. No injury allocable to Sellinger's apparent negligence could be ascertained unless and until the Wagners—using competent counsel to resurrect their medical malpractice claim—failed nonetheless to recover damages from the medical defendants, a result that did not occur until late August 1996.

The leading treatise on legal malpractice, after defining an "injury" as the "loss or impairment of a right, remedy, or interest," MALLEN & SMITH, LEGAL MALPRACTICE, § 22.11, at 380 (5th ed.2000), has noted that an attorney's negligent error in the prosecution of a lawsuit "may create only the potential for injury." *Id.* § 22.12, at 396 (5th ed.2000). If that potential is not realized until later—if its occurrence depends on "a contingent or future event"—then the injury is not sustained until the contingent or future event occurs. *Id.* at 396–97. Typically, therefore, a potential—not actual—injury has occurred when a client claims that an attorney has mishandled a lawsuit still in progress by failing to take appropriate discovery or by making some other error that, however egregious, does not conclude the lawsuit. That is to say, until the lawsuit is resolved (either by verdict or ruling in court or by settlement), the injury remains uncertain or inchoate. *Id.* at 409–10. It follows that the statute of limitations has not yet begun to run. *See, e.g., Welborn v. Shipman,* 608 So.2d 334, 336 (Ala.1992) (although plaintiff in sex discrimination case knew of attorney's failure to present crucial evidence on April 16, 1987, plaintiff suffered no injury from that failure—and thus statute of limitations did not begin to run—until final judgment entered on October 23, 1987); *Johnson v. Cornett,* 474 N.E.2d 518, 519 (Ind.Ct.App. 1985) (for statute of limitations purposes,

---

Wagner's counsel agreed to supplementing the record with it upon proffer by appellees' counsel.

attorney's alleged malpractice did not result in damage until dissolution order in divorce proceeding became final); *K.J.B., Inc. v. Drakulich,* 107 Nev. 367, 811 P.2d 1305, 1306 (1991) (statute of limitations "does not commence to run against a cause of action for attorney malpractice until the conclusion of the underlying litigation wherein the malpractice allegedly occurred"; until then, "element of injury or damage remains speculative and remote," and "cause of action for professional negligence" is "premature").[9]

In this case, the full extent of the injury and related wrong—based, apparently, on use of a bovie rather than a rongeur in performing the operation on Mrs. Wagner—was not discovered until trial of the medical malpractice action in August 1996. The Wagners' efforts to reopen discovery in order to cure Sellinger's earlier, allegedly perfunctory efforts were frustrated during the medical malpractice proceeding by the trial court's refusal in October 1994 to allow successor counsel to depose the surgeons again. Thus, even if one could argue—despite the case law cited above—that the Wagners were assuredly injured by that discovery opportunity definitively lost in October 1994, their suit of August 1997 was comfortably filed within the three-year limitation period.

At oral argument on appeal, counsel for appellees—holding firm for a July 21, 1994 trigger of the limitations period—argued that the Wagners could either have filed their lawsuit within three years of that date and moved for a stay until the medical malpractice case had been resolved at trial, or sought an agreement with Sellinger and his firm tolling the statute of limitations without filing suit. Had both such efforts failed, counsel acknowledged, their position would have been considerably weaker. The problem with this argument, of course, is that it presupposes an injury sufficient to trigger a complaint as of July 21, 1994, a date, as we have seen, that represents at most an uncertain or inchoate injury.

In sum, for lack of a demonstrable injury before the jury verdict was entered against the Wagners on August 27, 1996 in their medical malpractice action, Mrs. Wagner's suit against appellee Sellinger and his firm, filed August 8, 1997,[10] came well within the three-year statute of limitations.

### III.

Appellees contend that, even if the suit is not time barred, affirmance is required because Mrs. Wagner failed to proffer the

9. In contrast, when an attorney negligently drafts a document, such as a contract or settlement agreement, that fails to protect the client's interests, that negligence typically is completed—the financial loss is certain—before ensuing litigation confirms the inevitable. The legal right or remedy is not in flux as it is when discovery is not complete and an issue is resolvable only by jurors who reasonably could differ on the evidence. In these legal document situations, therefore, the injury is realized at the time of the attorney's error. *See, e.g., Arizona Mgmt. Corp. v. Kallof,* 142 Ariz. 64, 688 P.2d 710, 713 (Ct.App.1984) (holding client suffered ascertainable damages when settlement agreement was entered into, not when court confirmed the rights were lost); *Magnuson v. Lake,* 78 Or.App.

620, 717 P.2d 1216, 1219–20 (1986) (holding statute of limitations began to run when plaintiff-client learned attorney negligently drafted contract, not later when plaintiff lost on merits defending contract in lawsuit); *Security Bank & Trust Co. v. Fabricating, Inc.,* 673 S.W.2d 860, 864–65 (Tenn.1983) (holding bondholders injured at time of default, not when lawsuit concluded against grantors); MALLEN & SMITH, LEGAL MALPRACTICE, § 22.12, at 404.

10. The amended complaints relate back to the date of the original complaint. *See Strother v. District of Columbia,* 372 A.2d 1291, 1297–98 (D.C.1977) (discussing Super. Ct. Civ. R. 15(c)).

expert testimony necessary to create a prima facie case of negligence. Specifically, they say, Mrs. Wagner failed to designate an expert, with the required expert's report, by the date specified in the scheduling order, and further failed to respond to appellees' expert interrogatories.

The trial court did not rule on this alternative ground. Furthermore, even though we can review the record de novo, the decision whether dismissal, in contrast with some other sanction, is appropriate for failure to proffer expert testimony and respond to interrogatories is quintessentially a discretionary call of the trial court. In this case, moreover, the Wagners' ability to respond to trial court orders was affected during the time frame that concerns us here by difficulties presented to the Wagners by appellees' ultimately successful motion to disqualify their trial counsel. All things considered, therefore, we leave this issue for trial court consideration after remand.

We also decline to rule on the trial court's disqualification of appellant's counsel, attorney Camenisch, on the ground that, as a witness to the alleged legal malpractice that formed the basis for this lawsuit, he could not also serve as trial counsel consistent with the requirements of professional ethics. *See* MODEL RULES OF PROFESSIONAL CONDUCT Rule 3.7 (1997). Camenisch had defended against disqualification at trial primarily on the grounds that his clients were "penurious" and would suffer "substantial hardship" in seeking new counsel; that the motion was "premature" because discovery, as yet to be conducted, might lead to settlement, not trial; and that the motion to disqualify was a "tactical maneuver" designed to deprive the Wagners of their "counsel of choice." Citing Rule 3.7(a)(3) (permitting lawyer to act as witness at client's trial if "disqualification would work a substantial hardship on the client"), Camenisch urged the trial court to deny the defendants' (appellees') motion.

The trial court, however, granted the motion to disqualify: "Plaintiff's counsel is an obvious witness for early deposition in this litigation and a potentially crucial trial witness.... This litigation is stayed for 30 days or the entry of appearance of new counsel for plaintiff. All scheduling order dates are stayed for 60 days." Camenisch sought reconsideration citing, as additional grounds, constitutional due process and the availability of other witnesses (his co-counsel in the medical malpractice case) who would obviate the need for him to appear on his clients' behalf in this case. The court denied reconsideration without elaboration, adding: "This litigation is stayed to permit plaintiffs reasonable opportunity to obtain new counsel after which any necessary adjustment to the discovery schedule will be considered."

Ordinarily we would review for abuse of discretion. Here, however, because the trial court's merits decision is now reversed and the case is remanded for further proceedings, we are not confident that the circumstances that gave rise to the trial court's disqualification ruling should dictate whether Camenisch ethically can represent appellant hereafter, at least before discovery issues are resolved and trial becomes a certainty. Accordingly, we leave it to the trial court to revisit the disqualification issue in light of all the circumstances at time of remand—a time that may or may not present exigencies permitting an exception to disqualification under Rule 3.7.

For the reasons set forth above, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*