Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 10, 2005      Decided December 30, 2005

No. 03-7024

THERESA B. BRADLEY
APPELLANT

v.

NATIONAL ASSOCIATION OF SECURITIES DEALERS DISPUTE
RESOLUTION, INC., ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv02047)

———


*Theresa B. Bradley*,  *pro se*, argued the cause and filed the briefs for appellant.

*Christopher J. Carney*, appointed by the court, argued the cause as *amicus curiae* in support of appellant.  With him on the briefs was *Warren A. Fitch*.

*Douglas R. Cox* argued the cause for appellees.  With him

on the brief were *Jeffrey A. Wadsworth* and *Terri L. Reicher*. *F. Joseph Warin*, *Michael J. Edney*, and *William M. Jay* entered appearances.

Before: SENTELLE, RANDOLPH and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Theresa Bradley *pro se* appeals the district court's dismissal under Fed. R. Civ. P. 12(b)(6) of her complaint against the National Association of Securities Dealers Dispute Resolution, Inc. ("NASD") as time-barred under the three-year statute of limitations of D.C. Code § 12-301(8). Bradley sued NASD, which administers a dispute resolution program for the National Association of Securities Dealers, after an arbitration panel in Florida had dismissed her arbitral complaint against her stock brokerage company with prejudice. Aided by amicus on appeal, Bradley contends that *Wagner v. Sellinger*, 847 A.2d 1151 (D.C. 2004), which was decided after the district court dismissed her complaint, demonstrates that the three-year statute of limitations did not begin to run until February 24, 1999, when she first learned the reason her arbitral complaint was dismissed. We conclude that *Wagner* did not change District of Columbia law on inquiry notice, and therefore we affirm.

## I.

According to the complaint, Bradley opened an investment account with Dean Witter Reynolds, Inc. ("Dean Witter") on February 26, 1992. The account consisted of her thirty years of professional earnings and life savings and was her sole source of income. Over the next eight months, until the account was closed on October 16, 1992, Dean Witter made unauthorized and unsuitable investments on her behalf, destroying her entire

$750,000 stock and bond portfolio.

On October 24, 1994, Bradley initiated arbitration proceedings against Dean Witter, alleging violations of the Securities Exchange Act and internal compliance standards, churning, fraud, and misrepresentation.  She selected NASD as the sponsoring organization for the arbitration after receiving assurances that NASD conducted its proceedings pursuant to the Uniform Code of Arbitration and that the hearings would take place in Atlanta, Georgia where Bradley lived.  After Bradley paid the $300 filing fee and $700 deposit fee for the final hearing in Atlanta, she and Dean Witter entered into pretrial discovery.   She submitted 3,000 pages of documents, comprising eight years of financial records from her bank and investment accounts, as well as personal tax returns for the same period (1985-1992).  Dean Witter had requested all of her financial records through the time of the arbitration hearing.  However, the chairman of the arbitration panel ruled on July 25, 1995 that no documents dated beyond November 30, 1992 need be produced by either party.  Dean Witter did not file any objections to this ruling within the allotted time and hence all discovery requests and pretrial matters were complete.  The arbitration panel scheduled a final hearing for November 1995 in Atlanta.

Dean Witter twice requested and was granted postponement of the final hearing.  Then, on January 6, 1996, over Bradley's objections, Dean Witter was granted a change of venue from Atlanta to Fort Lauderdale, Florida.  With the change in venue, a new panel of arbitrators was selected.  For the next two years, Dean Witter filed exactly the same pretrial discovery requests that had been ruled on by the Atlanta arbitration panel, including requests for documents that had already been produced.  NASD forwarded Dean Witter's discovery requests to the new arbitrators in Florida without informing them of the prior ruling

of the Atlanta panel cutting off further discovery. NASD also denied Bradley access to her case file in Fort Lauderdale in June 1997.

On January 7, 1998, the new arbitration panel dismissed Bradley's complaint. She challenged the dismissal in a Florida state court, which remanded the case for the panel to explain the basis of its dismissal. On February 24, 1999, the panel amended its order of dismissal to cite the correct rule, namely Rule 10305 of the NSAD Code of Arbitration Procedure, which authorizes dismissal for failure to comply with orders of the panel, here for additional discovery sought by Dean Witter. Having produced thousands of pages of documents, spent over $30,000 over the course of five years in attempting to obtain a fair hearing as part of what she had contemplated would be a quick, efficient, and inexpensive arbitration, Bradley sued NASD and certain of its employees in the federal district court on September 26, 2001. She sought compensatory damages on account of alleged professional negligence, fraud, abuse of process, and intentional infliction of emotional distress. NASD moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) & (6). The district court dismissed the complaint on the ground that Bradley's claims were time barred under D.C. Code § 12-301(8), *see Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 245 F. Supp. 2d 17, 19 (D.D.C. 2003), and she appeals.

## II.

Because Bradley filed her complaint on September 26, 2001, her claims are time barred under D.C. Code § 12-301(8) unless they accrued on or after September 26, 1998. Bradley does not challenge the district court's choice of law ruling in determining that D.C. Code § 12-301(8) applies. She also acknowledges that the statute of limitations began to run when she was injured and was at least on inquiry notice as to the

cause. This only happened, she contends, when the Florida arbitration panel, upon remand from the state court, amended its order on February 24, 1999 to indicate that the dismissal of her arbitral complaint was premised on her purported failure to comply with discovery orders. In view of the fact that she was proceeding *pro se* before the Florida arbitration panel and was denied access to her case file, and in view of the state court's inability to understand the basis of the panel's dismissal order of January 7, 1998, Bradley maintains that NASD has not shown that she was on inquiry notice prior to February 24, 1999 when she became aware of the causal link between NASD's mishandling of the arbitration and the dismissal of her complaint. Our review of the dismissal of her complaint under Rule 12(b)(6) is *de novo*. *See Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1031-32 (D.C. Cir. 2004); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

The District of Columbia applies a discovery rule to determine when the statute of limitations begins to run where the relationship between the injury and the alleged tortious conduct is obscure. *See Morton v. Nat'l Med. Enters., Inc.*, 725 A.2d 462, 468 (D.C. 1999). Under the discovery rule, a claim does not accrue until a plaintiff knows, or by the exercise of reasonable diligence should know, of (1) an injury, (2) its cause, and (3) some evidence of wrongdoing. *See Bussineau v. President and Dirs. of Georgetown Coll.*, 518 A.2d 423, 435 (D.C. 1986). A plaintiff is on such "inquiry notice" of wrongdoing when "the plaintiff has reason to suspect that the defendant did some wrong, even if the full extent of the wrongdoing is not yet known." *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004); *Morton* 725 A.2d at 468-69.

The face of the complaint makes clear that each of the alleged injuries by NASD and its employees occurred prior to

the January 7, 1998 dismissal of Bradley's arbitral complaint with prejudice and that Bradley was aware of these injuries as they occurred. Bradley alleges that NASD injured her by virtue of its improper change of venue on January 6, 1996; its excessive delay of the arbitration and improper grant of Dean Witter's pre-arbitral discovery requests from January 6, 1996 to January 7, 1998; and its improper denial of her right to review her case records in June 1997. Accordingly, under the discovery rule, Bradley was on inquiry notice of all of the alleged wrongs no later than January 7, 1998, when her arbitral complaint was dismissed. This is more than three years before she filed her complaint in the present suit. Her claims are barred under the discovery rule.

The District of Columbia has adopted an exception to the discovery rule in legal malpractice suits – the continuous representation rule. Under this rule, "when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated." *R.H.D. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997) (quoting *Weisberg v. Williams, Connolly & Califano*, 390 A.2d 992, 995 (D.C. 1977)). Thus, even if, according to the discovery rule, a plaintiff was on inquiry notice of an attorney's malpractice more than three years prior to filing suit, the statute of limitations will not begin to run until the attorney's representation is terminated.

The analogy between legal malpractice claims and arbitral malpractice claims is tenuous and therefore it is not obvious that District of Columbia courts would borrow the continuous representation rule from legal malpractice cases and apply it to arbitral malpractice suits. The court in *Winston* explained that "the [continuous representation] rule is based on respect for the attorney/client relationship and the desire, if the client so

chooses, to avoid unnecessarily disrupting the representation in which the error occurred." *Id*. at 768. Indeed, under the rule "[t]he attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages." *Id*. There is no relationship of trust and confidence between arbitrators and the complainant comparable to that between an attorney and the client or a doctor and the patient. *Cf. Anderson v. George*, 717 A.2d 876, 878 (D.C. 1998).

On the other hand, one reason the District of Columbia adopted the continuous representation rule is the consequences clients would face without it. The *Winston* court explained:

> [I]f we rejected the continuous representation rule, we would force the client into one of two scenarios. If the client chooses to retain the attorney, he risks the possibility that during such representation the statute of limitations would expire (because the client "discovered" the alleged negligence and three years passed) and thus he risks foregoing redress of his legal rights. If the client chooses not to stay with his original attorney he must sue that attorney for malpractice . . . thus causing a major disruption to the underlying case. . . .

*Id.* at 773. These same consequences are likely in arbitral malpractice claims without the continuous representation rule. Forcing an injured party in an arbitration proceeding to mount a challenge to the arbitrators who are deciding the injured party's case would force a similar disruption to the proceedings and eliminate the possibility that mid-course errors could be corrected or would prove harmless once the arbitration was completed. However, were Bradley's claims held to have accrued before the arbitration panel dismissed her complaint with prejudice, then she would be between the scylla and

charybdis of either suing her arbitrators while the arbitration proceeding was ongoing or forfeiting any claims against them. For these reasons we will assume that the continuous representation rule applies to arbitral malpractice suits.

In *Winston*, as a result of an attorney's alleged malpractice, the Federal Communications Commission denied the plaintiff's application to build a new radio station. 700 A.2d at 767. But the plaintiff retained the attorney to seek reconsideration before the agency and to appeal to this court. *Id.* In the malpractice suit against the attorney, the District of Columbia Court of Appeals adopted the continuous representation rule and held that despite the plaintiff's inquiry notice, the statute of limitations was "tolled until the attorney cease[d] to represent the client in the specific matter at hand." *Id.* at 768. The analogue to arbitral malpractice claims is that the limitation period is tolled until the arbitrators cease to service the parties in the specific dispute between them. The court in *Winston* also set an outer bound on the duration of the "specific dispute"– it does not include appeals. *Id.* at 770-71; *see also Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989). It follows that the continuous representation rule tolls the running of the statute of limitations on Bradley's claims only until the January 7, 1998 dismissal of her arbitral complaint with prejudice. Bradley's claims are time barred even under the continuous representation rule.

Amicus points to the recent decision of the D.C. Court of Appeals in *Wagner* to support Bradley's position that January 7, 1998 is not the appropriate accrual date for Bradley's claims. In *Wagner*, the plaintiffs sued their former attorney for legal malpractice arising out of a medical malpractice case in which the attorney represented the plaintiffs until being fired in the middle of the case. 847 A.2d at 1153-54. The court held that the limitations period under D.C. Code § 12-301(8) did not begin to run until the jury had returned an adverse verdict

because "a statute of limitations cannot begin to run until the first day on which discovery will show that the plaintiff had a bona fide lawsuit based on injury, meaning a legally cognizable claim that would survive a motion to dismiss. Absent injury, there is no lawsuit." *Id.* at 1155. The court reasoned that until the underlying case giving rise to a lawsuit for legal malpractice "is resolved (either by verdict or ruling in court or by settlement), the injury remains uncertain or inchoate" and, therefore, the statute of limitations does not begin to run. *Id.* at 1156. Prior to resolution of the underlying lawsuit, the court explained, the plaintiffs "still had hope, however faint, that matters could be turned around . . . ." *Id.* So, Amicus maintains, *Wagner* shows that Bradley did not suffer any redressable injury until the Florida arbitration panel's dismissal with prejudice on February 24, 1999, as Bradley was not previously on inquiry notice because the panel had cited the wrong rule as the basis for its January 7, 1998 dismissal.

There is no indication in District of Columbia law that inquiry notice requires knowledge of the nature of one's injury. In *Wagner*, the court reaffirmed that a "plaintiff need not be fully informed about the injury for the statute [of limitations] to begin running; she need only have *some* knowledge of *some* injury." *Wagner*, 847 A.2d at 1154, citing *Colbert v. Georgetown Univ.*, 641 A.2d 469, 473 (D.C. 1994) (en banc); *see also Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989). Just as the *Wagner* plaintiffs were on inquiry notice of a claim for legal malpractice once the jury returned its verdict even though the plaintiffs did not know the precise basis for the verdict, Bradley was on inquiry notice of her claims for arbitral malpractice no later than January 7, 1998, when her complaint was dismissed with prejudice even though she did not know why. Bradley's lack of knowledge of the precise basis for the dismissal does not toll the running of the statute of limitations. Under District of Columbia law, the panel's subsequent

clarification on February 24, 1999 of the basis for its dismissal is a circumstance of no relevance.

To the extent that Bradley maintains that her injuries, like those of the plaintiffs in *Wagner*, were "inchoate" until the February 24, 1999 dismissal of her arbitral complaint with prejudice, she would stretch the continuous representation exception beyond its limits. Amicus suggests that because the panel did not cite the correct rule for its dismissal of Bradley's arbitral complaint until February 24, 1999, the arbitration was "still being administered." Amicus Reply Br. at 10. This approach will not work here. First, the District of Columbia does not recognize the exhaustion of appeals rule, under which a "cause of action accrues when the case has come to the end of the appellate process." *Winston*, 700 A.2d at 771; *see also Furlow*, 553 A.2d at 1234-36 & n.2. By parity of reasoning, any lingering hope that the state court might vacate the January 7, 1998 dismissal or that a remand might cause the panel to reinstate her arbitral complaint is irrelevant for purposes of determining whether Bradley was on inquiry notice on January 7, 1998. Second, Bradley filed a lawsuit in Florida state court premised on the dismissal of her arbitral complaint on January 7, 1998, eliminating any doubt that as of that date she was on inquiry notice of her injuries as a result of the actions by NASD and its employees that are alleged in her complaint.

Accordingly, because Bradley's claims are time barred under D.C. Code § 12-301(8), we have no occasion to address whether NASD and its employees have immunity from suit, and we affirm the judgment dismissing the complaint.