Aurore BLECK, Appellant,

v.

David F. POWER, Appellee.

No. 07–CV–476.

District of Columbia Court of Appeals.

Argued June 19, 2008.

Decided Sept. 4, 2008.

---

Sherman L. Cohn, with whom Isadore Katz, Washington, DC, was on the brief, for appellant.

Aaron L. Handleman, Hanover, MD, with whom Elizabeth N. Hayes, was on the brief, for appellee.

Before REID, GLICKMAN and FISHER, Associate Judges.

GLICKMAN, Associate Judge:

Aurore Bleck sued her former attorney, David F. Power, for legal malpractice. Judge Anderson granted Power's motion to dismiss the suit as barred by the three-year statute of limitations. Bleck has appealed, contending that she brought suit within three years of the date on which her cause of action accrued. We disagree with that contention and affirm the judgment of the Superior Court.

## I.

As an employee of the National Academy of Sciences between 1986 and 1998, Aurore Bleck was covered by a long-term disability (LTD) insurance policy issued by Teachers' Insurance and Annuity Association of America (TIAA). In 1997, Bleck filed a claim under the policy for LTD benefits. After TIAA determined that she was not "totally disabled" and denied her claim in March 1998, Bleck retained attorney David Power to represent her in seeking reconsideration. On May 14, 1999, however, TIAA rendered a final decision

denying Bleck's claim and terminating her benefits. A few months later, Power advised Bleck that her right to sue TIAA on her LTD benefits claim had "matured," and he agreed to bring the lawsuit on her behalf.

Power filed Bleck's suit against TIAA in the United States District Court for the District of Columbia on May 10, 2002. TIAA moved to dismiss the suit as time-barred by a policy provision specifying that any action to recover benefits had to be brought within two years from the end of the time within which proof of total disability was required. The district court granted TIAA's motion on July 29, 2003.[1]

Bleck discharged Power and hired new counsel, who, on August 12, 2003, moved the district court to reconsider its ruling. The court treated the motion as one "to alter or amend a judgment" pursuant to Federal Rule of Civil Procedure 59(e) and denied it on January 7, 2004. Bleck did not file an appeal.

Nearly three years later, on January 5, 2007, Bleck commenced the present legal malpractice action against Power in District of Columbia Superior Court. Her complaint alleged "[t]hat [Power] was negligent in failing to file [Bleck's] lawsuit [against TIAA] within the proper time of two (2) years as set forth in the contract" of insurance. Pursuant to Civil Rule 12(b)(6),[2] Power moved to dismiss the complaint as barred by the three-year statute of limitations. Power argued that the limitations period began to run on July 29, 2003, when the district court dismissed Bleck's lawsuit against TIAA. Bleck countered that the statute of limitations did not begin to run on her claim against Power

---

1. The district court found that Bleck was required to submit proof of her total disability by July 1998, but that her 2002 lawsuit was untimely even if the two-year contractual period for filing it did not start to run until TIAA finally denied her claim on May 14, 1999.

2. Super. Ct. Civ. R. 12(b)(6).

until the district court denied her Rule 59(e) motion on January 7, 2004. Rejecting Bleck's argument, Judge Anderson granted Power's motion to dismiss Bleck's complaint.

## II.

■ Power's Rule 12(b)(6) motion to dismiss challenged the legal sufficiency of Bleck's complaint to state a viable claim for relief in light of the statute of limitations. Our review is *de novo*, presuming the complaint's factual allegations to be true and construing them in the light most favorable to Bleck.[3]

■ A legal malpractice action in the District of Columbia must be filed within three years "from the time the right to maintain the action accrues."[4] At the earliest, the action accrues "when the plaintiff has sustained some injury, even if the injury occurs prior to the time at which the precise amount of damages can be ascertained."[5] The term "injury" encompasses

any "loss or impairment of a right, remedy or interest, or the imposition of a liability."[6] Under the "discovery rule," however, "a plaintiff's right of action in a legal malpractice case does not accrue until the plaintiff has knowledge of, or by the exercise of reasonable diligence should have knowledge of (1) the existence of the injury; (2) its cause in fact; and (3) some evidence of wrongdoing."[7] In addition, under the "continuous representation rule," a client's legal malpractice claim "does not accrue until the attorney's representation concerning the particular matter in issue is terminated"[8] (even if the client knows before then that her attorney has made an injurious error).

■ Applying the foregoing principles to this case, Bleck was injured by Power's alleged negligence when he missed the contractual deadline for commencing an action against TIAA, thereby forfeiting her claim for LTD benefits.[9] Bleck could have initiated a malpractice action against Pow-

**3.** *See, e.g., Luna v. A.E. Eng'g Servs., LLC,* 938 A.2d 744, 748 (D.C.2007).

**4.** D.C.Code § 12–301(8) (2001). *See Ray v. Queen,* 747 A.2d 1137, 1141 (D.C.2000); *Knight v. Furlow,* 553 A.2d 1232, 1233 (D.C. 1989).

**5.** *Ideal Elec. Sec. Co., Inc. v. Brown,* 817 A.2d 806, 811 (D.C.2003); *see also Wagner v. Sellinger,* 847 A.2d 1151, 1155 (D.C.2004) ("Absent injury, there is no lawsuit."); *Knight, supra* note 4, 553 A.2d at 1235 ("It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises.") (internal quotation marks and citations omitted).

**6.** 3 MALLEN & SMITH, LEGAL MALPRACTICE, § 23:11, at 354 (2008 ed.) ("These are the spectrum of injuries sustained by clients.") (hereinafter, "MALLEN & SMITH"); *Wagner, supra* note 5, 847 A.2d at 1156; *see also Knight, supra* note 4, 553 A.2d at 1235 ("Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of

action upon which the client may sue.") (internal quotation marks and citations omitted).

**7.** *Ray, supra* note 4, 747 A.2d at 1141; *see Wagner, supra* note 5, 847 A.2d at 1154 ("Thus, the plaintiff need not be fully informed about the injury for the statute to begin running; she need only have *some* knowledge of *some* injury.") (emphasis in original); *Knight, supra* note 4, 553 A.2d at 1234.

**8.** *R.D.H. Commc'ns, Ltd. v. Winston,* 700 A.2d 766, 768 (D.C.1997) (internal quotation marks and citation omitted).

**9.** That TIAA theoretically might have waived the contractual time bar by failing to assert it did not mean Bleck's injury was too remote or speculative to support a malpractice claim. "[T]he predicate of the case-within-a-case methodology [for proving malpractice] is ascertaining what the result 'should have been.' This presupposes the proper presentation and defense of a claim." MALLEN & SMITH, § 23:12, at 390.

er immediately, without first pursuing her futile suit in federal district court; for in cases where an attorney has missed a deadline for filing suit, "[t]he injury occurred when the client's action was legally subject to dismissal, rather than the actual, but fortuitous, date of dismissal."[10] Bleck may not have known of Power's error when he committed it, and he continued to represent her for some time thereafter. But by August 2003, Bleck knew Power had missed the contractual filing deadline, and she had replaced him with new counsel. This was more than three years before she sued Power.

We addressed a similar situation in *Weisberg v. Williams, Connolly & Califano.*[11] The appellants in that case sued their former law firm ("WC & C") for neglecting to file a Federal Tort Claims Act (FTCA) complaint on their behalf against the government before the statute of limitations had run on the major part of their claims. This Court rejected the contention that appellants' cause of action for malpractice accrued only when they received the district court's ruling that their FTCA claims were time-barred. That date, we said, was "well beyond the point at which appellants suffered injury."[12] Rather, we held, the appellants' cause of action for malpractice accrued, at the latest, once they had obtained new counsel in the FTCA case and were on notice of the government's assertion of a statute of limi-

tations defense to their FTCA claims.[13] Because those two conditions were fulfilled more than three years before appellants sued WC & C, we affirmed the dismissal of their complaint as barred by the statute of limitations governing malpractice actions.

It follows *a fortiori* that Bleck's malpractice complaint against Power for missing a filing deadline also is time-barred. Just as the appellants' cause of action for malpractice in *Weisberg* accrued before the district court dismissed their FTCA claims, Bleck's cause of action for malpractice in this case accrued before the district court denied her motion to reconsider its dismissal of her LTD benefits claim.

■ Bleck argues that the statute of limitations on her malpractice claim was tolled while her timely Rule 59(e) motion was pending, because there was no final, appealable judgment until the court denied that motion.[14] This argument is inconsistent with *Weisberg* and contrary to the premise that, "[i]n this jurisdiction, a legal malpractice claim becomes ripe when there is 'client knowledge of some injury, its cause, and related wrongdoing.'"[15] Thus, in situations where an attorney's error results in a loss at trial, we specifically have declined to adopt an "exhaustion of appeals rule," pursuant to which the cause of action for malpractice would accrue only when the adverse judgment is affirmed on

---

10. *Id.* at 389 (adding that "if the rule were otherwise, the client would never suffer an injury unless a lawsuit was filed, a subject within the client's control") (citations omitted). "[T]he judicial determination does not 'create' the injury, though it reveals the injury." *Id.* at 385.

11. 390 A.2d 992 (D.C.1978). Although *Weisberg* was decided before this Court adopted the discovery and continuous representation rules for legal malpractice cases, we treated the case essentially as if those rules were applicable. *See id.* at 995–96.

12. *Id.* at 995.

13. *Id.* at 996 ("[A]ppellants as of that date were on actual notice of all the elements that formed the basis of their [malpractice] claim against appellees....").

14. *See* D.C.App. R. 4(a)(4).

15. *R.D.H. Commc'ns, supra* note 8, 700 A.2d at 771 (quoting *Knight, supra* note 4, 553 A.2d at 1236).

appeal.[16] We see no justification for treating a motion asking the trial court to reconsider its adverse ruling differently from an appeal for tolling purposes.[17]

Bleck quotes our opinion in *Wagner* for the proposition that her "hope, however faint, that matters could be turned around"[18] by her Rule 59(e) motion was enough, by itself, to prevent the malpractice cause of action from accruing. But *Wagner* did not hold that the mere possibility of a judicial remedy in a lawsuit impaired by an attorney's negligence automatically tolls the statute of limitations from running on a malpractice claim. Rather, the case turned on the peculiar difficulty of determining whether an attorney's inferior representation *in the conduct of litigation* is injurious before the outcome of the litigation is known. The plaintiff in *Wagner* charged that her lawyer mishandled a lawsuit by failing to take appropriate discovery and making other mistakes that did not conclude the litigation. Under those circumstances, we held, "there was no way to articulate any injury that could yield ascertainable damages"

before the suit was over; until then, any injury attributable to the attorney's litigation errors "remain[ed] uncertain or inchoate."[19] Because the plaintiff's only "demonstrable injury" in *Wagner* occurred when the jury returned an adverse verdict, we held that her malpractice cause of action did not accrue before that point.[20]

In contrast, Power's error in the present case was not that he mishandled a lawsuit in progress, but simply that he allowed a filing deadline to expire. His error was akin to that of "an attorney [who] negligently drafts a document, such as a contract or settlement agreement, that fails to protect the client's interests...."[21] In those situations, as we recognized in *Wagner*, "the negligence typically is completed ... before ensuing litigation confirms the inevitable," and "therefore, the injury is realized at the time of the attorney's error."[22]

We thus conclude that the injury in this case was realized either in July 2000 or May 2001, when Power let the two-year period elapse without filing suit.[23] Taking

---

16. *See R.D.H. Commc'ns, supra* note 8, 700 A.2d at 771 (stating that "the exhaustion of appeals rule manipulates the concept of legal injury"); *Knight, supra* note 4, 553 A.2d at 1235 ("We also do not accept the argument that a client sustains no actionable injury until affirmance on appeal of an adverse lower court judgment."). We also have observed that "[w]hile a successful appeal undoubtedly will reduce a client's damages, it will not necessarily prove that the lawyer's negligence did not injure the client." *Id.*

17. *Cf. Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 369 U.S.App. D.C. 79, 85, 433 F.3d 846, 852 (2005) (noting that "the District of Columbia does not recognize the exhaustion of appeals rule," and holding "[b]y parity of reasoning, [that] any lingering hope that the state court might vacate the January 7, 1998 dismissal or that a remand might cause the panel to reinstate her arbitral complaint is irrelevant for purposes of deter-

mining whether Bradley was on inquiry notice on January 7, 1998") (citations omitted).

18. *Wagner, supra* note 5, 847 A.2d at 1156.

19. *Id. See also* Mallen & Smith, *supra* note 6, § 23:12, at 393 (explaining that the situation is "distinguishable" when attorney error occurs *during* a judicial proceeding: "[s]ince subsequent events usually determine the economic consequence of the error, the time of the injury is when the judicial action is completed, typically upon the entry of an order or judgment, or when final, such as when the time for appellate review has passed.") (footnote omitted).

20. *Wagner, supra* note 5, 847 A.2d at 1157.

21. *Id.* at 1157 n. 9.

22. *Id.*

23. *See supra*, note 1.

into account the continuous representation and discovery rules, Bleck's cause of action for malpractice against Power therefore accrued no later than August of 2003—more than three years before she sued him in January of 2007. The judgment on appeal dismissing her suit as untimely is, therefore, *affirmed*.