BIOMET INC., Appellant,

v.

FINNEGAN HENDERSON
LLP, Appellee.

No. 07–CV–813.

District of Columbia Court of Appeals.

Argued Dec. 10, 2008.

Decided March 19, 2009.

John W. Karr, with whom Theodore S. Allison was on the brief, Washington, for appellant.

John K. Villa, with whom F. Whitten Peters, Jonathan Landy, and Richard A. Olderman were on the brief, Washington, for appellee.

Before WASHINGTON, Chief Judge, BLACKBURNE–RIGSBY, Associate Judge, and SCHWELB, Senior Judge.

WASHINGTON, Chief Judge:

Biomet Inc. ("Biomet") appeals from the grant of summary judgment in favor of Finnegan Henderson LLP ("Finnegan") by the trial court. Below, the trial court found that, as a matter of law, Finnegan could not be held liable for legal malpractice in this case and granted summary judgment. The trial court set forth two basic grounds for its grant of summary judgment: (1) that the constitutional issue that the Federal Circuit deemed waived was not preserved in the post-trial motions, and Finnegan was not responsible for the post-trial motions, and (2) that Finnegan could not be held liable for mal-

practice based on its reasonable, tactical litigation decision involving an unsettled point of law. Because we agree with the trial court's conclusion that Finnegan made a reasonable, tactical litigation decision involving an unsettled point of law, we affirm.

## I.

This case involves a legal malpractice claim brought by Biomet, a manufacturer of orthopedic devices, against Finnegan, a law firm, alleging that Finnegan failed to preserve a constitutional challenge to excessive punitive damages resulting in waiver of the issue. Briefly, the relevant facts include the following. In 1991, Dr. Raymond Tronzo brought a suit against Biomet in the United States District Court for the Southern District of Florida alleging that Biomet infringed and misused his patent and other confidential information. In 1996, following a jury verdict, the district court awarded $7,134,000 in compensatory damages and $20 million in punitive damages against Biomet for patent infringement, fraud, and violation of a confidential relationship. The district court also enjoined Biomet from manufacturing the device that used the infringed patent. Finnegan was hired by Biomet to assist with the post-trial motions in the district court and to handle Biomet's appeal to the Federal Circuit, if necessary.

After the district court rejected Biomet's post-trial motions for relief, Finnegan handled Biomet's appeal to the Federal Circuit challenging the district court's ruling that the plaintiff had presented sufficient evidence to support a jury verdict of patent infringement. Finnegan did not appeal the punitive damage award as unconstitutional at that time because the ratio of punitive to compensatory damages after the initial trial was only 3:1, and the jury had found Biomet's conduct to be particularly reprehensible making such an argument extremely difficult. On appeal, Finnegan successfully obtained reversal of the patent infringement finding and the injunction. *See Tronzo v. Biomet, Inc.,* 156 F.3d 1154 (Fed.Cir.1998). The Federal Circuit then remanded the case for recalculation of damages in light of its ruling.

On remand from the Federal Circuit, the district court determined that Biomet was liable for only $520 in compensatory damages. Following the significant reduction in the compensatory damages, Finnegan moved for a reduction of the $20 million punitive damage award in light of the Supreme Court's ruling in *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), which held that excessive punitive damages can violate constitutional due process. The district court agreed that the new 38,000:1 ratio of punitive to compensatory damages was unconstitutionally excessive and reduced the punitive damages to $52,000. On appeal from the district court's judgment reducing both the compensatory and punitive damage awards, the Federal Circuit held that punitive damage relief was precluded by its mandate. Specifically, the Federal Circuit held that because punitive damages were not challenged in the initial appeal, Biomet had waived its right to seek relief from the punitive damage award while the case was on remand. *See Tronzo v. Biomet, Inc. (Tronzo II ),* 236 F.3d 1342 (Fed.Cir.2001). Therefore, the Federal Circuit reinstated the $20 million punitive damage award.

## II.

Under District of Columbia law, to prevail on a claim of legal malpractice, a plaintiff must establish the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of. *See*

*O'Neil v. Bergan,* 452 A.2d 337, 341 (D.C. 1982). Here, there is no dispute, that, with regard to the initial appeal to the Federal Circuit, Finnegan was the attorney of record, Finnegan and Biomet had an attorney-client relationship, and Finnegan owed a duty to Biomet based on that relationship. Specifically, Finnegan owed Biomet a duty to work in Biomet's interests using a reasonable degree of knowledge, care, and skill. *See Morrison v. MacNamara,* 407 A.2d 555, 561 (D.C.1979) ("[A] lawyer must exercise that degree of reasonable care and skill expected of lawyers acting under similar circumstances."); *see also* D.C. R. Prof. Cond. R. 1.1. The issue before us is whether Finnegan could be found to have breached its duty of care to Biomet by failing to include a constitutional challenge to punitive damages in its initial appeal to the Federal Circuit.

Below, the trial court found that Finnegan's decision not to challenge the punitive damage award as constitutionally excessive in the initial appeal was a protected exercise of legal judgment and not a basis for legal malpractice. On appeal, Biomet argues that the reasonableness of Finnegan's litigation strategy is a question of fact for the jury. While the reasonableness of an attorney's litigation strategy may not always be susceptible to resolution on summary judgment, we believe in this case the trial court's ruling was proper.

■ It has long been recognized that an attorney is not liable for mistakes made in the honest exercise of professional judgment. *See National Sav. Bank v. Ward,* 100 U.S. 195, 198, 25 L.Ed. 621 (1879) ("[I]t must not be understood that an attorney is liable for every mistake that may occur in practice, or that he may be held responsible to his client for every error of judgment in the conduct of his client's cause."). In *Ward,* the Supreme Court recognized that, where an attorney makes

an error in judgment, "the rule is that if he acts with a proper degree of skill, and with reasonable care and to the best of his knowledge, he will not be held responsible." *Id.* Today, that same basic proposition is often recognized as professional judgment immunity or judgmental immunity. *See e.g., Woodruff v. Tomlin,* 616 F.2d 924, 930 (6th Cir.1980) (applying Tennessee law); *see also Dixon Ticonderoga Co. v. Estate of O'Connor,* 248 F.3d 151, 173 (3d Cir.2001) (applying New Jersey law); *Paul v. Smith,* 267 Ga.App. 107, 599 S.E.2d 206, 209 (2004); *McIntire v. Lee,* 149 N.H. 160, 816 A.2d 993, 1000 (2003); *Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker,* 133 Idaho 1, 981 P.2d 236, 239–40 (1999); *Crosby v. Jones,* 705 So.2d 1356, 1358 (Fla.1998); *Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842, 847 (1995); *Gelsomino v. Gorov,* 149 Ill.App.3d 809, 813–14, 104 Ill.Dec. 1, 502 N.E.2d 264 (1986); *Halvorsen v. Ferguson,* 46 Wash. App. 708, 735 P.2d 675, 681–82 (1986); *Martinson Mfg. Co. v. Seery,* 351 N.W.2d 772, 775 (Iowa 1984); *Kirsch v. Duryea,* 21 Cal.3d 303, 146 Cal.Rptr. 218, 578 P.2d 935 (1978); *Martin v. Burns,* 102 Ariz. 341, 429 P.2d 660, 662 (1967); *Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144, 146 (1954).

In *Woodruff, supra,* a seminal case on attorney judgmental immunity, the Sixth Circuit examined the doctrine and its underpinnings and held that "there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment." 616 F.2d at 930 (affirming the dismissal of a malpractice claim where "the concessions in the appellate brief resulted from a tactical decision reached in the exercise of professional judgment and d[id] not furnish a basis for a malpractice action"). Recognizing the widespread acceptance of the judgmental immunity principle, the Sixth Circuit specifically noted

that "neither counsel nor we have found an American decision holding an attorney liable for the choice of trial tactics or the good faith exercise of professional judgment." *Id.* at 930 n. 1. Although we have not formally recognized judgmental immunity as a doctrine in the District of Columbia, we have concluded that the doctrine is a valid defense in negligence cases and have applied the principle in the legal malpractice context. *See Mills v. Cooter,* 647 A.2d 1118, 1122 (D.C.1994) ("An informed judgment, even if subsequently proven to be erroneous, is not negligence."); *see also Flax v. Schertler,* 935 A.2d 1091 (D.C. 2007).

▪ Essentially, the judgmental immunity doctrine provides that an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim. Central to the doctrine is the understanding that an attorney's judgmental immunity and an attorney's obligation to exercise reasonable care coexist such that an attorney's non-liability for strategic decisions "is conditioned upon the attorney acting in good faith and upon an informed judgment after undertaking reasonable research of the relevant legal principals and facts of the given case." *Sun Valley, supra,* 981 P.2d at 240; *Gelsomino, supra,* 502 N.E.2d at 267 ("[M]erely characterizing an act or omission as a matter of judgment does not end the inquiry."). "To hold that an attorney may not be held liable for the choice of trial tactics and the conduct of a case based on professional judgment is not to say, that an attorney may not be held liable for any of his actions in relation to a trial. He is still bound to exercise a reasonable degree of skill and care in all of his professional undertakings." *Woodruff, supra,* 616 F.2d at 930. As a result, the judgmental immunity doctrine has been described "as nothing more than a recogni-

tion that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability." *Sun Valley, supra,* 981 P.2d at 240. Having now been presented squarely with the issue, we are satisfied that judgmental immunity is a sound doctrine that is consistent with District of Columbia law, and therefore accept it here. To conclude otherwise, would mean that "every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight." *Woodruff, supra,* 616 F.2d at 930.

## III.

▪ In order to find that the trial court properly granted summary judgment for Finnegan based on judgmental immunity, we must be satisfied that (1) the alleged error is one of professional judgment, and (2) the attorney exercised reasonable care in making his or her judgment. *See Ward, supra,* 100 U.S. at 198. Neither party disputes the fact that Finnegan's decision about how to structure the initial appeal was an exercise of professional judgment. Further, Biomet does not contend that Finnegan failed to challenge punitive damages in the initial appeal because of oversight or neglect. Indeed, the evidence in the record shows that Finnegan originally included a challenge to punitive damages in early drafts of its proposed appellate brief to the Federal Circuit before removing that section in its later drafts. Clearly, the process of structuring an appellate brief and deciding which arguments are best raised is a strategic, litigation decision and an exercise of professional judgment. *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) ("Th[e] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evi-

dence of incompetence, is the hallmark of effective appellate advocacy." (internal citations omitted)).

■ Because Finnegan's decision not to challenge the punitive damage award as unconstitutional in the initial appeal was an exercise of professional judgment, we now must determine whether that professional judgment was reasonable at the time it was made, not whether a different strategy may have resulted in a more favorable judgment. *See Mills, supra,* 647 A.2d at 1123 ("[R]etrospective disagreement cannot be the predicate for a finding of legal malpractice."). Biomet argues that Finnegan, as seasoned appellate counsel, should have known that a failure to challenge the punitive damage award in the initial appeal to the Federal Circuit risked waiver of the constitutional issue on remand, and for that reason, Finnegan's decision was unreasonable. In response, Finnegan asserts that because it was aware of the Supreme Court's ruling in *BMW*, it intentionally chose not to seek a reduction of the punitive damage award during its initial appeal for two reasons: (1) because there was really no basis for initially appealing the punitive damage award given the relatively low ratio of punitive to compensatory damages, and (2) to raise it as part of the initial appeal required Finnegan to reargue evidence of Biomet's reprehensible conduct that was presented at trial; an argument that would have diluted its stronger argument regarding the lack of evidence supporting the patent infringement finding.

More importantly, Finnegan also asserts that it did not believe that a constitutional challenge alleging excessive punitive damages was viable prior to the reduction in compensatory damages on remand. Finnegan argues that its belief was reasonable and supported by case law prior to the Federal Circuit's contrary ruling. Specifically, Finnegan argues that it was a reasonable exercise of professional judgment to conclude that the constitutional challenge to the excessiveness of the punitive damage award would not have been waived by failing to raise it in the initial appeal because the constitutional problem only came into being once the compensatory damages were reduced on remand and the new ratio became unconstitutionally excessive.[1] Ultimately, the Federal Circuit rejected Finnegan's ripeness argument, a fact that underlies Biomet's argument that Finnegan failed to use reasonable skill in structuring the initial appeal. However, Finnegan maintains that, despite the Federal Circuit's contrary opinion, its judgment was reasonable at the time it was made because, prior to the Federal Circuit's ruling, the law was unsettled and reasonable attorneys could disagree as to whether the constitutional challenge was waived if not raised in the initial appeal.

■ In *Mills*, we recognized that "[a]n attorney is not liable for an error of judgment regarding an unsettled proposition of

---

1. Finnegan relies on cases in the vein of *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.)' " (quoting *Thomas v. Union Carbide Agricultural Prods. Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)), *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 139–40, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) ("We agree with the parties that this change in circumstance has substantially altered the posture of the case as regards the maturity of the final-conveyance issues ... And, since ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."), and *Hetzel v. Prince William County,* 523 U.S. 208, 209, 118 S.Ct. 1210, 140 L.Ed.2d 336 (1998).

law" and that if "reasonable attorneys could differ with respect to the legal issues presented, the second-guessing after the fact of . . . professional judgment [i]s not a sufficient foundation for a legal malpractice claim." 647 A.2d at 1122. This unsettled law exception to malpractice liability is a specific application of the judgmental immunity doctrine. *See* 7 AM.JUR. 2d *Attorneys at Law* § 208 ("[A]n informed judgment on the part of counsel, even if subsequently proved erroneous, is not negligence. *A fortiori*, an attorney is not liable for a mistaken opinion on a point of law that has not been settled by a court of last resort and on which reasonable doubt may well be entertained by informed lawyers."). That the existence of unsettled law relieves an attorney of malpractice liability is based on the understanding that an attorney is not expected, much less required, to accurately predict developments in the law. The law is not static, it ever-evolves and changes, and so "[b]ecause of those concerns, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized." MALLEN & SMITH, *Legal Malpractice* § 17.1, at 497 (4th ed. 1996) ("[T]he law is not an exact science. What an attorney thinks the law is today may not be what a court decides tomorrow[.]"); *see also Davis v. Damrell*, 119 Cal.App.3d 883, 174 Cal.Rptr. 257, 261 (1981) ("[T]he exercise of sound professional judgment rests upon considerations of legal perception and not prescience.").

 Recently, in *Flax, supra*, 935 A.2d at 1107–08, we noted that "[t]he uncertainty at the time of the underlying litigation [about whether this court would recognize a specific claim] significantly (if not fatally) undermines any claim that the [l]awyers were negligent in failing to bring such a claim." This case presents us with the

opportunity to make clear that no claim of legal malpractice will be actionable for an attorney's reasoned exercise of informed judgment on an unsettled proposition of law. Accordingly, because the existence of unsettled law immunizes an attorney's informed, albeit erroneous, judgment, the fact that the Federal Circuit found the issue waived is not in itself dispositive of the reasonableness of Finnegan's actions. *See Denzer v. Rouse*, 48 Wis.2d 528, 180 N.W.2d 521, 525 (1970) ("A successfully asserted claim of legal malpractice needs more than the fact, standing alone, that a trial or appellate court interpreted a document differently than the lawyer or his client presumed they would. A lawyer would need a crystal ball, along with his library, to be able to guarantee that no judge, anytime, anywhere, would disagree with his judgment or evaluation of a situation."). Whether Finnegan's strategy of challenging only liability in the initial appeal was reasonable requires consideration of the state of the law regarding constitutional challenges to excessive punitive damages at the time of the appeal.

The Supreme Court's decision in *BMW, supra*, 517 U.S. at 581, 116 S.Ct. 1589, the first case where the Court found punitive damages to be unconstitutionally excessive, was issued a year before Finnegan filed the initial appeal on behalf of Biomet. As the Court's latest word on the issue of unconstitutionally excessive punitive damages, the *BMW* opinion provided litigants the best guidance on the criteria used to evaluate the excessiveness of punitive damage awards, and the three primary considerations for evaluating the excessiveness of punitive damages advanced in *BMW* were reprehensibility, ratio, and criminal and civil sanctions for comparable misconduct.[2] Particularly, the Supreme

---

**2.** *BMW* is no longer the Supreme Court's

latest word on unconstitutionally excessive

Court indicated that the ratio of punitive to compensatory damages is a "significant" indicium of excessive punitive damages and while the ratio is not dispositive of unconstitutional excessiveness, it is a high ratio that will "raise a suspicious judicial eyebrow." 517 U.S. at 581, 583, 116 S.Ct. 1589. Prior to its decision in *BMW*, the Supreme Court had rejected claims of unconstitutional excessiveness in cases where the ratio of punitive to compensatory damages was 4:1, *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and 10:1, *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), because those ratios did not " 'jar one's constitutional sensibilities,' " ocess. *See BMW, supra*, 517 U.S. at 581, 116 S.Ct. 1589 (*quoting TXO, supra*, 509 U.S. at 458, 113 S.Ct. 2711). In *BMW*, the ratio of punitive to compensatory damages was 500:1, and though the Court found that the punitive damages were unconstitutionally excessive in that case, it also added that under some circumstances "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* at 582, 116 S.Ct. 1589. In sum, a fair reading of *BMW* suggests that while a high ratio of punitive to compensatory damages could be unconstitutionally excessive, a low ratio would not be, and that, a ratio of 10:1 punitive to compensatory damages is not excessive. *See id.* ("In most cases, the ratio will be within a constitutionally ac-

ceptable range, and remittitur will not be justified on this basis."); *see also TXO, supra*, 509 U.S. at 458, 113 S.Ct. 2711.

We are satisfied Finnegan's decision not to initially appeal punitive damages was a reasoned exercise of informed judgment that cannot under any circumstances be found to be negligent. We agree with the trial court that, prior to the Federal Circuit's ruling, whether the constitutionality of the punitive damage award could be raised for the first time following a reduction in compensatory damages occasioned by a favorable appeal was a debatable point of unsettled law. Based on relevant Supreme Court precedent, it was reasonable for Finnegan to believe that, because of the original, low 3:1 ratio of punitive to compensatory damages awarded by the judge after the trial and the jury's finding of Biomet's reprehensible conduct, Biomet did not have a viable constitutional challenge to the punitive damage award at the time of the initial appeal. Further, it was reasonable for Finnegan to conclude that, because the compensatory damages could be reduced following a favorable appeal, a challenge to excessive punitive damages in Biomet's case was contingent upon a reduction in the compensatory damages and creation of a higher damages ratio, and that such a contingent claim was "not ripe for adjudication" in the initial appeal. *Texas, supra*, 523 U.S. at 300, 118 S.Ct. 1257. Granted, the Federal Circuit disagreed with Finnegan's arguments about contingency and ripeness. But, prior to the Federal Circuit's ruling, reasonable attorneys, including, as the trial court noted, a district court judge and a number of past presidents of the Federal Circuit Bar Association, agreed with Finnegan that

punitive damages, but for our purposes we are only concerned with the law at the time

Finnegan filed the initial appeal.

the constitutionality of the punitive damage award was properly raised for the first time on remand despite the Federal Circuit's mandate. In fact, the past presidents of the Federal Circuit Bar Association filed a petition for certiorari in support of Biomet, objecting to the Federal Circuit's decision as a "new and unexpected procedural rule." Amici Curiae Br. of the Past Presidents of the Federal Circuit Bar Association in Support of Petitioner, at 14 (August 27, 2001), *available at* 2001 WL 34115962; *see also* PAUL M. JANICKE, *On the Causes of Unpredictability of Federal Circuit Decisions in Patent Cases,* 3 Nw. J. Tech. & Intell. Prop. 93, 100 (concluding that "the result [in *Tronzo II*] would have to be classified as unpredictable."). Additionally, following the Federal Circuit's decision in this case, the Sixth Circuit in *Smoot v. United Transp. Union,* 67 Fed.Appx. 328, 330 (6th Cir.2003), considered this same issue and concluded that a constitutional challenge to excessive punitive damages was not waived by failing to raise it in the initial appeal because it

was arguably not available until the compensatory damages were reduced.[3]

Because there was a substantial question, as to whether a constitutional challenge to punitive damages had to be raised during an initial appeal when the punitive damage award at that time was not unconstitutionally excessive when compared with the compensatory damage award, and because there was no clear precedent one way or the other prior to the Federal Circuit's opinion in the underlying case, and thus, reasonable attorneys could disagree, we are satisfied that, as a matter of law, there was no legal malpractice in this case.[4]

Therefore, for the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Appellee.

*Affirmed.*

---

3. We cite to the Sixth Circuit's decision in *Smoot* only to show that this issue is one on which even federal circuit courts are divided. We are not suggesting, however, that the law is still unsettled in the Federal Circuit on this point. Clearly, the Federal Circuit's decision in *Tronzo II* definitively addresses the issue of when a constitutional challenge to excessive punitive damages must be raised or is waived in the Federal Circuit and an attorney practicing before the Federal Circuit could not legitimately contend that his or her failure to raise

the issue in an initial appeal was a reasonable exercise of his or her professional judgment.

4. Biomet's attempt to recast its malpractice argument as also breach of contract and breach of fiduciary duty fails. *See Burgess v. Pelkey,* 738 A.2d 783, 787 (D.C.1999) ("The action thus pleaded cannot ... be removed from its place in the law of torts by calling what occurred also [a breach of contract].") (citations omitted).