# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 11, 2016         Decided August 12, 2016

No. 14-7126

SEED COMPANY LIMITED AND SHIGERU TAMAI,
APPELLANTS

v.

ANN G. WESTERMAN, AS THE PERSONAL REPRESENTATIVE OF
THE ESTATE OF WILLIAM F. WESTERMAN, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00355)

*Paul T. Meiklejohn* argued the cause for appellants. With him on the briefs was *Creighton R. Magid*.

*Lance A. Robinson* argued the cause for Westerman appellees. With him on the briefs were *Mark London* and *Christopher Mead*.

*John P. Glaws IV* argued the cause for Kratz appellees. With him on the brief was *Paul J. Maloney*.

Before: HENDERSON, KAVANAUGH and SRINIVASAN, *Circuit Judges*.

2

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: This case involves a legal malpractice action arising out of an unsuccessful application for a patent. Seed Company Limited, a Japanese company, is led by Shigeru Tamai. Tamai invented a dispenser of correctional tape enabling users to correct printed documents by rolling white tape over errors. Seed and Tamai hired legal counsel in connection with their patent applications. The effort to obtain a U.S. patent ultimately failed because of counsel's noncompliance with Patent Office regulations when filing a motion related to the application. As a result of the error, another inventor obtained the patent for the same invention.

Seed and Tamai sued their attorneys, alleging that they had committed malpractice when they submitted filings for the patent application without complying with the Patent Office regulations. The district court first rejected the defendants' argument that the suit was barred by the statute of limitations. But the court then granted summary judgment in their favor, ruling that they had exercised reasonable professional judgment in concluding (erroneously) that their filings complied with the Patent Office's rules.

We reverse and remand. We conclude that the statute of limitations had elapsed with respect to the malpractice claims against one group of defendants—those who ceased working on behalf of Seed and Tamai when the law firm engaged in the representation split into two firms. With regard to the remaining defendants—those who continued to represent Seed and Tamai after the breakup of the firm—we find that the statute of limitations poses no bar to the malpractice action. On the merits of the claims against those defendants,

we reverse the grant of summary judgment in their favor and remand the case for trial.

I.

Seed filed three relevant patent applications listing Tamai as the inventor: one in Japan, one through the international Patent Cooperation Treaty (PCT), and one in the United States. The PCT creates an international system for filing patents. After filing through the PCT, an inventor can submit related national applications in various member countries.

The dates of the applications were as follows. On July 31, 1991, Seed filed its Japanese application. The PCT application followed, on July 24, 1992. In March 1993, Seed and Tamai retained legal counsel to pursue a U.S. patent. On March 29, 1993, counsel filed a translation of the PCT application as Seed's first U.S. application. On February 15, 1994, they filed another U.S. application as a continuation-in-part of the first.

On May 9, 1997, the U.S. Patent Office determined that another inventor, Christopher J. Stevens, had already patented the same invention. The Board of Patent Appeals and Interferences thus began interference proceedings to determine whether Stevens or Tamai had first invented the device. Whoever could show an earlier patent application filing date for the same invention (known as a "constructive reduction to practice," 37 C.F.R. § 1.637(f)(3) (1997)) would have priority and receive the sole patent on the invention.

Stevens and Tamai each filed a "motion for benefit," a request to credit a U.S. application with the benefit of an earlier filing date based on a prior patent application for the same invention in a different jurisdiction. Stevens relied on

the filing date of his prior United Kingdom patent application. Tamai did not oppose Stevens's motion, and the Board granted him an effective filing date of February 10, 1993. Tamai relied on the earlier filing dates of Seed's Japanese and PCT patent applications.

The Patent Office had promulgated regulations governing motions for benefit. When a motion for benefit relied on a foreign patent application filed in a language other than English, the moving party was required to follow additional regulations requiring submission of a translation of the foreign application and an affidavit certifying the accuracy of the translation. 37 C.F.R. § 1.647 (1997). Both of Seed's earlier patent applications (in Japan and through the PCT) had been written in Japanese. Seed's counsel filed a translation of the Japanese application, but they failed to file a translation of the PCT application.

Because of the failure to include a translation of the PCT application, the Board denied Tamai's motion for benefit with respect to that application. The Board also denied Tamai's motion for reconsideration. Although the Patent Board denied the motion for benefit regarding the PCT application, it granted the motion with regard to the earlier Japanese application. Because the Japanese application (filed on July 31, 1991) predated Stevens's United Kingdom application (filed on February 10, 1993), the Board granted Tamai priority.

Stevens appealed to the Federal Circuit, arguing that the Board could not give Tamai the benefit of the Japanese application without also crediting the PCT application. Stevens relied on a statute specifying that the Board can give a patent application the benefit of an earlier application only if filed within one year of the prior one. *See* 35 U.S.C. § 119(a).

Tamai's Japanese application fell outside that window because it predated his U.S. application by more than one year. The PCT application in theory could create a chain linking the Japanese application to the U.S. application without violating the one-year rule because the PCT application was filed less than one year before the U.S. application and less than one year after the Japanese application. But the PCT application had been filed without the required translation. Without the PCT application, Stevens argued, the Japanese application alone was too old.

The Federal Circuit agreed with Stevens and held that the Japanese application could not establish an earlier filing date without the benefit of the PCT application. *Stevens v. Tamai*, 366 F.3d 1325, 1331 (Fed. Cir. 2004). And the court, like the Board, held that Tamai could not benefit from the PCT application's filing date because he had failed to file a translation of the PCT application. *Id.* at 1332. The court therefore remanded to the Board to enter judgment in favor of Stevens, *id.* at 1335, which the Board did.

Meanwhile, between the time of the initial Board decision in 2002 and the Federal Circuit appeal in 2004, the law firm with which Seed and Tamai's U.S. counsel had been associated had split into two separate firms. Until October 1, 2003, the attorneys representing Seed and Tamai had been doing business as part of one firm. On that date, some of those lawyers left the firm to form Westerman, Hattori, Daniels, and Adrian LLP. We will refer to them as the Westerman defendants. The remaining lawyers founded Kratz, Quintos & Hanson LLP. We will call them the Kratz defendants. Seed and Tamai (whom we will refer to collectively as "Seed" from this point forward) took their business to the new Westerman firm, which continued to represent them during the Federal Circuit appeal.

In December 2006, Seed obtained counsel to pursue a malpractice suit against the Westerman and Kratz defendants. The defendants and Seed entered into tolling agreements effective May 3, 2007 (for the Westerman defendants), and May 10, 2007 (for the Kratz defendants). On February 28, 2008, Seed brought this malpractice action against the Westerman and Kratz defendants.

The complaint, as amended, contains four counts. The first two counts, which apply to all defendants, allege that they committed malpractice by failing to file the translation of the PCT application (and also by giving erroneous advice about the implications of Stevens's appeal to the Federal Circuit). The third and fourth counts apply only to the Kratz defendants and are contingent on the dismissal of Seed's primary claims under the statute of limitations. The third and fourth counts allege that, if the statute of limitations bars the primary claims, the Kratz defendants committed malpractice by giving Seed erroneous advice about the statute of limitations.

Following discovery, the defendants moved for summary judgment and Seed moved for partial summary judgment on the question of liability. The district court found that the statute of limitations did not bar any of the claims. But the court granted the defendants' motion for summary judgment on the merits and thus denied Seed's motion. Because the court found no violation of the statute of limitations, it dismissed the third and fourth counts as moot. Seed now appeals.

## II.

We first consider whether Seed's claims were brought within the statute of limitations, and we then review the grant of summary judgment in the defendants' favor. Before

turning to these matters, however, we briefly address our jurisdiction over this appeal. Although no party contests our jurisdiction, we have an independent obligation to assure that we have it.

The district court had jurisdiction over this case because it meets the requirements for diversity jurisdiction. *See* 28 U.S.C. § 1332(a). While the Federal Circuit has exclusive jurisdiction over appeals in cases "arising under" federal patent law, 28 U.S.C. § 1295(a)(1), "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law" for purposes of jurisdiction, *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013). *Gunn* involved a different federal jurisdictional statute (28 U.S.C. § 1338(a)), but the Court's guidance about when a case "arises under" federal patent law also informs the proper interpretation of the statute at issue in this case (28 U.S.C. § 1295(a)(1)), which contains identical operative language. *See Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 645-46 (Fed. Cir. 2015). This case, like *Gunn*, involves no forward-looking questions about any patent's validity, but instead solely concerns whether unsuccessful patent applicants can recover against their attorneys. We therefore have appellate jurisdiction to review the district court's decision. 28 U.S.C. § 1291.

## A.

The threshold question before us is whether the statute of limitations bars the malpractice claims against either the Westerman defendants or the Kratz defendants. We review the application of the statute of limitations de novo. *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 432 (D.C. Cir. 2004). Because we hear this case under diversity jurisdiction, we apply the choice-of-law rules of the forum state, here, the

District of Columbia. The District of Columbia in turn requires us to apply its rules concerning the statute of limitations. *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995). The burden of proof rests with the defendants because the statute of limitations is an affirmative defense. *Brin v. S.E.W. Inv'rs*, 902 A.2d 784, 800-01 (D.C. 2006).

The statute of limitations for legal malpractice claims in the District of Columbia is three years. D.C. Code § 12-301(8) (2001). The limitations period starts to run when "the right to maintain the action accrues." *Knight v. Furlow*, 553 A.2d 1232, 1233-34 (D.C. 1989). The cause of action accrues when the would-be plaintiff has knowledge of, or by the exercise of reasonable diligence should have knowledge of, three items: the injury, its cause in fact, and some evidence of wrongdoing. *Id.* at 1234. At that point, the plaintiff is on inquiry notice of the cause of action, and the statute of limitations begins to run. *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C. 2004).

Each group of defendants argues that Seed's claims against it are barred by the statute of limitations. The Westerman defendants' tolling agreement with Seed took effect on May 3, 2007, and the Kratz defendants' tolling agreement took effect one week later, on May 10, 2007. It is undisputed that the agreements tolled the statute of limitations from those effective dates until the date of the complaint. The question thus is whether the statute of limitations had already run by the date the tolling agreements took effect. To show that the claims are barred by the statute of limitations, the defendants need to demonstrate both that the claims accrued more than three years before the tolling agreements and that there was no reason to toll the limitations period during those three years.

Seed contests the defendants' position on both scores: it contends that its cause of action accrued within three years of the tolling agreements, and it further argues the statute of limitations was tolled during the Federal Circuit appeal. With regard to the latter argument, Seed relies on the "continuous-representation rule." That rule tolls the statute of limitations for a legal malpractice claim during the time the attorney continues to represent the client in the relevant matter. The rule aims to avoid putting a client in the position of having to choose between (i) disrupting an ongoing lawyer-client relationship to enable bringing a malpractice claim and (ii) continuing the relationship but relinquishing the claim. *See Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution*, 433 F.3d 846, 850 (D.C. Cir. 2005). Under the rule, "when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated." *Id.* (quoting *R.D.H. Commc'ns, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997)).

The district court addressed the application of the statute of limitations to the Westerman and Kratz defendants together, finding that the claims were not time-barred. *See Seed Co. v. Westerman*, 62 F. Supp. 3d 56, 62-65 (D.D.C. 2014). The court concluded that the claims had accrued by March 13, 2003, more than three years before the effective date of the tolling agreements. *Id.* at 63. But the court held that the continuous-representation rule tolled the statute of limitations. *Id.* at 63-65. We disagree in part: we conclude that the continuous-representation rule applies only to the Westerman defendants, not the Kratz defendants, and that the first and second counts must therefore be dismissed as they apply to the Kratz defendants.

10

1.

Like the district court, we conclude that the statute of limitations on the claims against the Westerman defendants was tolled while the Westerman firm represented Seed during and after the Federal Circuit appeal. The departure of the Westerman lawyers to form their own law firm (on October 1, 2003) did not affect the operation of the continuous-representation rule with respect to the Westerman defendants. Seed had been notified of the impending split, and, on September 9, 2003, its agent sent a letter to the existing firm directing that the new Westerman firm would represent it with regard to its patent application. After the split, the Westerman firm continued to represent Seed in pursuing the patent (although the Kratz firm did not).

The Westerman defendants argue that the continuous-representation rule did not apply during the Federal Circuit appeal. We disagree. Although the rule will not *always* toll the statute of limitations during an appeal, it is not categorically inapplicable either. At the least, the rule applies when the *same* attorneys continue to represent a client in connection with the *same* matter. *See De May v. Moore & Bruce, LLP*, 584 F. Supp. 2d 170, 183 (D.D.C. 2008). Here, the Federal Circuit appeal concerned the same matter for which the Westerman defendants had been originally hired: procuring Seed's patent. The same lawyers at the Westerman firm continued to represent Seed through the appeal.

Contrary to the Westerman defendants' argument, this court's decision in *Bradley*, 433 F.3d 846, did not establish that the continuous-representation rule never applies during an appeal. Although *Bradley* observed that the "specific dispute" for purposes of the continuous-representation rule "does not include appeals," *id.* at 851, the case did not involve

a situation in which the same lawyer continued to represent the client on appeal. In fact, *Bradley* did not involve a lawyer-client relationship at all. Instead, we assumed that an analogous continuous-representation rule would apply to a claim alleging malpractice by an arbitration panel assigned to resolve the plaintiff's underlying action; but we held that the rule would toll the statute of limitations only until the arbitration panel made its decision, not through the appeal of that decision in court (at which point the plaintiff of course had no ongoing relationship with the arbitral panel). *See id.* at 850-51. To the extent *Bradley* has implications for the operation of the continuous-representation rule in the context of lawyer-client relationships, it did not hold that the rule never applies during an appeal, even one handled by the same lawyer who represented the plaintiff at trial. *See De May*, 584 F. Supp. 2d at 183. Because the relevant appeal here involved a continued representation by the same lawyers in the same matter, we hold that the continuous-representation rule tolled the statute of limitations during the appeal.

Seed and the Westerman defendants also disagree about when the claims against the Westerman defendants accrued. We need not resolve the dispute, because, even under the Westerman defendants' view, the claims against them were timely filed. They argue that the claims accrued on March 13, 2003, when the Patent Board denied Tamai's request for reconsideration. The Westerman tolling agreement took effect on May 3, 2007. Seed's complaint therefore was timely as long the statute of limitations was tolled until at least May 3, 2004 (three years before the tolling agreement took effect). The Westerman defendants continued to represent Seed well past May 3, 2004: at that point, the Federal Circuit had yet to issue its decision. As a result, the claims against the Westerman defendants were brought within the statute of limitations.

12

2.

We reach a different conclusion with regard to the claims against the Kratz defendants. The Kratz defendants' tolling agreement took effect on May 10, 2007. We find that the continuous-representation rule did not toll the statute of limitations for the claims against them at any point in the three-year period from May 2004 to May 2007. We further hold that the claims accrued before May 10, 2004. The claims against the Kratz defendants are therefore barred by the statute of limitations.

We join other courts in holding that the continuous-representation rule does not toll the statute of limitations on a claim against a firm after the attorney providing the representation leaves the firm and takes the client's business with her. *See Dunn v. Rockwell*, 689 S.E.2d 255, 275 (W. Va. 2009); *Beal Bank, SSB v. Arter & Hadden, LLP*, 167 P.3d 666 (Cal. 2007). In that situation, the client is no longer represented by the original firm. The continuous-representation rule thus no longer tolls the statute of limitations for malpractice claims against that firm. That conclusion accords with the underlying objectives of the rule: "avoid[ing] unnecessarily disrupting the representation in which the error occurred" and giving the firm "the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages." *R.D.H. Commc'ns*, 700 A.2d at 769 (quotation omitted). The rule cannot guard against unnecessary disruption of ongoing representations or encourage lawyers to correct their mistakes after the client has already taken its business to a new firm. *See Beal Bank*, 167 P.3d at 671.

Consequently, the continuous-representation rule cannot save Seed's claims against the Kratz defendants. By the fall

of 2003, the Kratz defendants had formed their own firm and no longer represented Seed in pursuing the patent application at issue in this case: Seed's agent confirmed in writing on September 9, 2003, that the patent case was "entrusted to" the Westerman firm. J.A. 576. As a result, if the claims accrued sometime before May 10, 2004, then more than three years would have elapsed before the May 10, 2007, effective date of the tolling agreement, and the claims would be time-barred.

The Kratz defendants argue that the claim accrued at the latest on May 4, 2004, the date of the Federal Circuit's decision against Seed. We agree. After the Federal Circuit issued its decision directing the Patent Board to enter judgment against Seed, Seed should have known that it would be denied its patent (an injury) because of the failure to include a translation of the PCT application (a cause in fact attributable to the defendants). Seed presses two responses, neither of which persuades us.

Seed's first argument is that its claim did not accrue until September 14, 2004, when the Board entered its post-appeal judgment on remand from the Federal Circuit. The Federal Circuit, however, directed the Patent Board to enter judgment against Seed, *see* 366 F.3d at 1335, so there was no ambiguity about what would happen on remand. Seed relies on *Wagner*, in which the District of Columbia Court of Appeals held that a client does not suffer an injury triggering the statute of limitations at the moment her attorney errs during discovery or trial. *Wagner*, 847 A.2d at 1156. But *Wagner* held only that the injury arises when the trial court resolves the case, not that any injury awaits final resolution of an appeal. *See id.* at 1156-57. This court has already rejected a reading of *Wagner* that would require "exhaustion of appeals" before the statute of limitations begins to run. *Bradley*, 433 F.3d at 852. And the District of Columbia Court of Appeals similarly rejected

an exhaustion-of-appeals rule in its pre-*Wagner* cases. *R.D.H. Commc'ns*, 700 A.2d at 771. The "lingering hope" that an appellate ruling might lead to a different outcome on remand is "irrelevant for purposes of determining" the date the statute of limitations begins to run based on inquiry notice. *Bradley*, 433 F.3d at 852.

Seed next claims it did not realize that the Federal Circuit decision meant it had lost its patent claim. It contends that, even after the Federal Circuit issued its decisions, the Westerman defendants continued to represent that Seed could receive a patent by contesting the Federal Circuit decision. Seed relies on a letter dated May 5, 2004, in which the Westerman defendants presented a number of possible ways to deal with the adverse decision, including by petitioning for rehearing or for review in the Supreme Court. The letter acknowledged that those options were unlikely to succeed, but it held open the possibility.

We conclude that Seed had inquiry notice of an injury upon receiving the Federal Circuit decision. The Federal Circuit instructed the Patent Board "to enter judgment for Stevens" (and thus against Tamai) on remand. *Stevens*, 366 F.3d at 1335. At most, the Westerman defendants' advice could have convinced a reasonable party in Seed's position that there existed some chance the injury could be resolved in further appeals. But no reasonable client could conclude that the possibility of redressing an injury in further proceedings means that no injury exists in the first place.

Seed thus had inquiry notice of its claim against the Kratz defendants by May 4, 2004, more than three years before the effective date of their tolling agreement. Consequently, the first and second counts against the Kratz defendants were barred by the statute of limitations.

3.

We finally consider the application of the statute of limitations to the third and fourth counts in the complaint, i.e., the contingent claims concerning the Kratz defendants' advice about the statute of limitations for the claims alleged in the first and second counts. Seed contends that it sought advice in 2005 from James Armstrong, a member of the Kratz firm, about the accrual date for its first two malpractice claims. Armstrong suggested that those claims had ripened on either June 10, 2004 or October 18, 2004, such that they would have been timely when filed. Seed's claims of malpractice based on that advice about the statute of limitations is contingent on its loss of the first two counts on statute of limitations grounds.

The district court did not dismiss the first two counts on statute-of-limitations grounds; it dismissed them on the merits. Because the third and fourth counts were contingent on the dismissal of at least one of the first two counts on statute-of-limitations grounds, the court found that the third and fourth counts were moot. But because we have now concluded that the claims against the Kratz defendants are barred by the statute of limitations, the contingent counts must be adjudicated. We remand for the district court to adjudicate them in the first instance.

B.

Having concluded that the statute of limitations poses no bar to the claims against the Westerman defendants, we turn to considering whether those claims survive summary judgment. We review grants and denials of summary judgment de novo. *Fenwick v. Pudimott*, 778 F.3d 133, 136

(D.C. Cir. 2015); *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005).

Seed's claims in this case arise under District of Columbia law. That law requires a plaintiff to establish three elements to state a claim of malpractice: "the applicable standard of care, a breach of that standard, and a causal relationship between the violation and the harm complained of." *Biomet Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 664 (D.C. 2009). The standard of care in a legal malpractice case is the "degree of reasonable care and skill expected of lawyers acting under similar circumstances." *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979). Specialists must "adhere to a standard of conduct commensurate with" their "special training and experience." *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982) (quoting *Morrison*, 407 A.2d at 560).

The District of Columbia applies the judgmental-immunity doctrine, under which "an informed professional judgment made with reasonable care and skill cannot be the basis of a legal malpractice claim." *Biomet*, 967 A.2d at 666. The Westerman defendants argue that their decision fell within the protections of the judgmental-immunity doctrine. The district court agreed and granted them summary judgment. To affirm, we would need to find no genuine dispute of material fact about either of the elements of the doctrine: "that (1) the alleged error is one of professional judgment, and (2) the attorney exercised reasonable care in making his or her judgment." *Id.*; *see* Fed. R. Civ. P. 56(a). Because we find a genuine issue as to both, we reverse the grant of summary judgment.

1.

We first examine if there is any genuine issue about whether the Westerman defendants' error in failing to file a translation with the PCT application was one of professional judgment. All parties agree that Tamai needed the benefit of the PCT application's filing date to establish priority over Stevens in the patent interference proceeding. *See* p. 5, *supra*. The question thus becomes what the Westerman defendants needed to do to get Tamai the benefit of the PCT application's filing date.

The Patent Office had promulgated two pertinent rules. First, Rule 637 stated that a motion for benefit must serve all opponents with copies of the relevant earlier application, and must, "[i]f the earlier filed application is not in English," comply with Rule 647. 37 C.F.R. § 1.637(f)(2). Rule 647, in turn, provides that "[w]hen a party relies on a document or is required to produce a document in a language other than English, a translation of the document into English and an affidavit attesting to the accuracy of the translation shall be filed with the document." *Id.* § 1.647. When the Westerman defendants filed Tamai's motion for benefit, however, they included neither a translation of the PCT application nor an affidavit attesting to its accuracy. *Stevens*, 366 F.3d at 1328. As a result, if a reasonable lawyer would have known that getting the benefit of the PCT filing date would require complying with Rules 637 and 647, the Westerman defendants' failure to abide by those rules could not have been an exercise of professional judgment.

The Westerman defendants respond that they reasonably believed Rules 637 and 647 did not pertain to PCT applications. Rule 637 applies only to "earlier filed application[s]." 37 C.F.R. § 1.637(f)(2). The Westerman

18

defendants argue that, when they filed the motion for benefit in 1997, a reasonable lawyer could have thought that PCT applications designating the United States did not count as "earlier filed application[s]" in subsequent national applications. They rely on the Manual of Patent Examining Procedure, which as of 1997 stated that a PCT application was not a separate application but rather an earlier "stage" of the American application which automatically shared the same filing date. Manual of Patent Examining Procedure § 1893.03(b) (6th ed., Rev. 2, July 1996); *see* 35 U.S.C. § 363 (1997) (amended 2011). The manual thus directed applicants "not [to] claim benefit of the filing date of the international application" in a national application. Manual of Patent Examining Procedure § 1893.03(c). The Westerman defendants argue that the manual reflected a reasonable belief among patent lawyers in 1997: because Rule 637 applied to motions for benefit and the Westerman defendants did not believe they needed to file a motion for benefit for the PCT application, they concluded that the translation requirements in Rules 637 and 647 did not apply to the PCT application.

We conclude that Seed raises a genuine dispute of material fact about whether the defendants' decision could have been characterized as an exercise of professional judgment in 1997. Although the manual provides some evidence in support of the defendants' claim, Seed also cites evidence supporting its position. Drawing all inferences in favor of Seed, we conclude that a factfinder could find the Westerman defendants' choice unreasonable.

First, ambiguity about the applicability of the rules' translation requirement to PCT applications does not necessarily support the defendants' claim that they exercised judgment in failing to file a translation. Typically, the judgmental-immunity doctrine applies when a lawyer makes a

strategic choice between two options, each of which has costs and benefits. For example, in *Biomet*, the defendant lawyer had to decide which arguments to include in the limited space in his appellate brief. 967 A.2d at 666. But an attorney does not exercise professional judgment when she interprets unsettled law in a way that "manifestly risk[s] the loss of [a] client's claims" for no plausible advantage. *Skywark v. Isaacson*, 202 B.R. 557, 564 (S.D.N.Y. 1996). A factfinder could infer that a reasonable lawyer would err on the side of caution by filing the translation if the requirements were ambiguous and there were no reason *not* to do so.

Second, the Westerman defendants' actions did not align with their purported understanding of the requirements. The defendants' claimed interpretation—in which an American application based on a PCT application was not a separate application at all—is belied by the fact that they filed a motion for benefit regarding the PCT application. The regulation authorizing motions for benefit referenced "an earlier filed application" just like Rule 637, and it directly referred readers to Rule 637. 37 C.F.R. § 1.633(f) (1997). If the Westerman defendants in fact had thought that the PCT application was not an "earlier filed application"—but rather an automatically credited earlier stage of the same application—there would have been no need to file a motion for benefit at all. But they did file a motion for benefit, and in the title of that document, they called the PCT application an "earlier filed application" and referenced Rule 637. J.A. 947. A reasonable factfinder could infer that the exercise of professional judgment could not lead to the Westerman defendants' seemingly odd hybrid strategy: electing to file a motion for benefit but without following the proper procedures for such a motion.

Moreover, Seed introduced an affidavit from an expert attesting that a reasonable patent lawyer in 1997 would have understood the regulations to require the filing of a translation in connection with a motion for benefit related to a PCT application. Any other understanding of the regulations would make little sense, Seed contends: it would call for the Board to decide in an interference proceeding whether a PCT application written in a foreign language patented the same invention as the one claimed by the other party, but to do so without a translation of the relevant application. And although the Federal Circuit's 2004 decision in *Stevens* would not necessarily speak to the state of the law in 1997, *Stevens* characterized the application of Rules 637 and 647 to PCT applications as "very clear." 366 F.3d at 1335.

For those reasons, we conclude Seed has raised a genuine dispute of material fact about the requirements a reasonable patent lawyer would have thought relevant to claiming the benefit of a prior PCT application in 1997. Whether the Westerman defendants exercised professional judgment in choosing not to file a translation is a question for the finder of fact.

Finally, we briefly address the Westerman defendants' claim that they thought they *did* file a translation. In their view, they exercised their professional judgment in concluding that the American application itself would qualify as a translation of the PCT application. But even if the American application in fact was a translation of the PCT application, the opposing party and the Patent Office would not have known it because the American application was not filed *as a translation* and included no affidavit attesting to its accuracy. At the very least, a factfinder could conclude that no lawyer exercising professional judgment would have

considered a document entirely unidentified as a translation to somehow satisfy a translation requirement.

2.

Seed next argues that the defendants failed to exercise reasonable care in making the decision not to file the translation. To fall under the judgmental-immunity doctrine, the lawyer must "undertak[e] reasonable research of the relevant legal princip[les] and facts of the given case." *Biomet*, 967 A.2d at 666 (quotation omitted). It is not enough to "characteriz[e] an act or omission as a matter of judgment." *Id.* (quotation omitted).

The Westerman defendants have introduced no evidence of their deliberative process in reaching the decision not to file the translation. They have produced no research, memoranda, or other internal correspondence about the applicability of Rules 637 and 647 to PCT applications. Nor have they submitted any affidavits about their consideration of such questions. Although the absence of evidence is not necessarily dispositive, it at least permits a factfinder to draw an inference that the Westerman defendants did not exercise reasonable care. That sort of reasonable inference makes summary judgment for the defendants inappropriate in this case.

3.

Seed argues that, not only was it wrong to grant summary judgment in favor of the defendants, but summary judgment should have been granted in favor of Seed. Although we do not think the Westerman defendants are entitled to summary judgment when we weigh the evidence in Seed's favor, we similarly do not think Seed is entitled to summary judgment

when we make the opposite inferences. The Westerman defendants raise a genuine dispute of material fact about whether they could have reasonably thought that Rules 637 and 647 did not apply to PCT applications. The resolution of that dispute is for the factfinder at trial.

### III.

Finally, two of the Westerman defendants argue that they should be dismissed from the case. Edward Kenehan and the Westerman firm are listed as defendants only for the second count of the complaint, which alleges that they gave Seed erroneous advice about the strength of its arguments in the Federal Circuit appeal. The district court found that Seed had withdrawn its second count because it had conceded that there were no damages stemming from the second count in particular. Kenehan and the Westerman firm moved to be dismissed from this appeal because the district court had found, based on Seed's concession, that any claims against them were moot. Seed responds that the defendants' understanding of its concession is too broad. In Seed's view, the second count contained two types of damages: damages from not accepting a settlement, and damages from underestimating the importance and finality of the Federal Circuit appeal, delaying their discovery of their malpractice claims. Seed admits that it conceded the first type of damages, but not the second.

We decline to resolve those issues at this stage. Because the district court found that the claims were brought within the statute of limitations, it had no occasion to consider whether the second count alleges damages stemming from appellants' failure to pursue their malpractice claims sooner due to the defendants' erroneous advice about the significance of the Federal Circuit appeal (and, if it does, whether Seed

waived those damages as well). Our decision requires answers to those questions: if the allegations in the complaint cover such a claim and Seed did not concede it, Seed could seek damages based on the Westerman defendants' faulty advice about the timing of its (now dismissed) claims against the Kratz defendants. We remand to the district court to interpret the complaint in the first instance and decide whether Seed waived any remaining claims against Kenehan and the Westerman firm.

\* \* \* \* \*

We hold that the first and second counts of the complaint should be dismissed against the Kratz defendants as barred by the statute of limitations, and we remand for further proceedings on the contingent third and fourth counts. With regard to the Westerman defendants, we reverse the district court's grant of summary judgment on the first and second counts and remand for further proceedings. We also remand for the district court to decide whether Edward Kenehan and the Westerman firm should be dismissed from the suit.

*So ordered.*