# United States Court of Appeals
# for the Federal Circuit

---

**XITRONIX CORPORATION,**
*Plaintiff-Appellant*

**v.**

**KLA-TENCOR CORPORATION, DBA KLA-TENCOR, INC., A DELAWARE CORPORATION,**
*Defendant-Appellee*

---

2016-2746

---

Appeal from the United States District Court for the Western District of Texas in No. 1:14-cv-01113-SS, Judge Sam Sparks.

---

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

MICHAEL S. TRUESDALE, Law Office of Michael S. Truesdale, PLLC, Austin, TX, filed a response to the petition for plaintiff-appellant.

AARON GABRIEL FOUNTAIN, DLA Piper US LLP, Austin, TX, filed a petition for panel rehearing and rehearing en banc for defendant-appellee. Also represented by BRIAN K. ERICKSON, JOHN GUARAGNA.

---

Before PROST, *Chief Judge*, NEWMAN, MAYER[1], LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

NEWMAN, *Circuit Judge,* dissents from the denial of the petition for rehearing en banc.

LOURIE, *Circuit Judge,* dissents from the denial of the petition for rehearing en banc without opinion.

PER CURIAM.

## O R D E R

Appellee KLA-Tencor Corporation filed a petition for panel rehearing and rehearing en banc. A response to the petition was invited by the court and filed by appellant Xitronix Corporation. The petition for rehearing and response were first referred to the panel that heard the appeal, and thereafter, to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.

The petition for rehearing en banc is denied.

The mandate of the court will issue on June 22, 2018.

FOR THE COURT

June 15, 2018     /s/ Peter R. Marksteiner
    Date        Peter R. Marksteiner
                Clerk of Court

---

[1]     Circuit Judge Mayer participated only in the decision on the petition for panel rehearing.

# United States Court of Appeals for the Federal Circuit

---

**XITRONIX CORPORATION,**
*Plaintiff-Appellant*

**v.**

**KLA-TENCOR CORPORATION, DBA KLA-TENCOR, INC., A DELAWARE CORPORATION,**
*Defendant-Appellee*

---

2016-2746

---

Appeal from the United States District Court for the Western District of Texas in No. 1:14-cv-01113-SS, Judge Sam Sparks.

---

NEWMAN, *Circuit Judge*, dissenting from denial of the petition for rehearing en banc.

I write because of the importance of this decision to the judicial structure of patent adjudication, and the future of a nationally consistent United States patent law.

In this case, the complaint states that the asserted violation of patent law may support violation of antitrust law—a *Walker Process* pleading based on charges of fraud or inequitable conduct in prosecution of the patent appli-

cation in the Patent and Trademark Office.[1]  The three-judge panel assigned to this appeal held that the Federal Circuit does not have jurisdiction, did not reach the merits, and transferred the appeal to the Fifth Circuit.[2] This jurisdictional ruling is contrary to the statute governing the Federal Circuit, and contrary to decades of precedent and experience.  Nonetheless, the en banc court now declines to review this panel ruling.

I write in concern for the conflicts and uncertainties created by this unprecedented change in jurisdiction of the Federal Circuit and of the regional courts of appeal. With the panel's unsupported ruling that the Supreme Court now places patent appeals within the exclusive jurisdiction of the regional circuits when the pleading alleges that the patent issue may lead to a non-patent law violation, we should consider this change en banc.

---

[1]  In *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, the Supreme Court held that the use of a patent obtained through intentional fraud on the USPTO to create or preserve a monopoly may expose the patent holder to antitrust liability.  382 U.S. 172, 176–77 (1965).  This court has summarized that: "In order to prevail on a *Walker Process* claim, the antitrust-plaintiff must show two things: first, that the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced the patent with knowledge of the fraudulent procurement; and second, all the other elements necessary to establish a Sherman Act monopolization claim." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016).

[2]  *Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075 (Fed. Cir. 2018) ("Transfer Order").

**The District Court's Decision was Limited to Patent Issues[3]**

The district court received a complaint for "*Walker Process* antitrust claims based on KLA's alleged fraudulent procurement of a patent." Dist. Ct. Dec. at *1. Xitronix alleged that the "entire prosecution" of the patent was tainted by fraud or inequitable conduct in the Patent and Trademark Office. J.A. 54 (¶111); J.A. 63 (¶145).

The panel now rules that the appealed issues of fraud and inequitable conduct in obtaining the patent do "not present a substantial issue of patent law," Transfer Order, 882 F.3d at 1078, and therefore that the jurisdiction of the Federal Circuit, 28 U.S.C. § 1295(a)(1), does not apply to this appeal. The panel states: "The underlying patent issue in this case, while important to the parties and necessary for resolution of the claims, does not present a substantial issue of patent law," and that "[s]omething more is required to raise a substantial issue of patent law sufficient to invoke our jurisdiction." Transfer Order, 882 F.3d at 1078. We are not told what that "[s]omething more" might be.

Neither party had questioned our appellate jurisdiction. The panel raised the question sua sponte, and now holds that a Supreme Court decision on state court malpractice jurisdiction, *Gunn v. Minton*, 568 U.S. 251 (2013), removed Federal Circuit jurisdiction of *Walker Process* patent appeals.

If the issues of inequitable conduct or fraud in procuring the patent are no longer deemed to be a substantial

---

[3]     2016 WL 7626575 (W.D. Tex. Aug. 26, 2016) ("Dist. Ct. Dec.").

issue of patent law, the court should speak en banc. Here, the district court reviewed the patent prosecution, including the references and other information relevant to examination for patentability; reviewed the applicant's arguments, the examiner's responses, and the examiner's reasoning in allowing the claims; and reviewed information from the concurrent infringement litigation. Dist. Ct. Dec. at *5–8. The district court wrote a detailed opinion, concluding that fraud or inequitable conduct in patent prosecution had not been shown. *Id.* at *9. This is the issue on appeal—the only issue. Xitronix argues on this appeal that the district court erred in its analysis and conclusion, and that the patent is invalid or permanently unenforceable.

The panel holds that patent validity and enforceability are not substantial questions of patent law, and therefore this case does not arise under the patent law. The panel removes the Federal Circuit from jurisdiction over appeals of *Walker Process* claims, and challenges Federal Circuit jurisdiction of all appeals where the complaint includes non-patent issues. This is a vast jurisdictional change for the regional circuits as well as the Federal Circuit.

**The Federal Circuit Jurisdictional Statute**

> 28 U.S.C. § 1295(a)(1). The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a final decision of a district court . . . in any civil action arising under . . . any Act of Congress relating to patents or plant variety protection.

The Supreme Court has summarized that for the purpose of "desirable uniformity [] Congress created the Court of Appeals for the Federal Circuit as an exclusive appellate court for patent cases, observing that increased uniformity would 'strengthen the United States patent system in such a way as to foster technological growth and industri-

al innovation." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) (quoting H.R. Rep. No. 97–312, pp. 20–23 (1981)).

Precedent has construed the clause "civil action arising under . . . any Act of Congress relating to patents," for the creation of the Federal Circuit as a national court raised occasional questions of appellate jurisdiction, as the courts sought to implement the legislative purpose. Precedent considered specific circumstances as they arose: for example, when the district court action included issues in addition to patent issues and the patent issues were not appealed; when the patent issue arose only by counterclaim; when the patent issue arose in a contract dispute; when the patent issue arose in connection with various antitrust claims; when the patent issue arose in a state court action; when the patent issue was later removed from the complaint; when the patent issue arose in a malpractice action.

Thus, we and the Supreme Court and the regional circuits have considered the boundaries of "civil action arising under . . . any Act of Congress relating to patents," across an array of diverse circumstances. Those boundaries produced helpful guidance in special or complex cases. However, the present case is simple, for the issue of fraud or inequitable conduct in prosecution of the patent application, the foundation of *Walker Process* jurisprudence, is cemented in its jurisdictional path to the Federal Circuit. If that path is to be changed, such change warrants en banc action.

**Supreme Court and Federal Circuit Precedent are Contravened by the Panel Decision**

The Supreme Court reviewed Federal Circuit jurisdiction early in our existence, in a case where the Seventh Circuit and the Federal Circuit each "adamantly disavowed jurisdiction" and insisted that the other was the correct appellate body. *Christianson v. Colt Indus. Oper-*

*ating Corp.*, 486 U.S. 800, 803 (1988). In *Christianson*, a former employee of Colt asserted Clayton Act and Sherman Act violations by Colt as well as tortious interference with business relationships; the employee requested damages and injunctive and equitable relief. An antitrust allegation related to patent validity. The district court decided for the former employee on both the antitrust and tortious interference claims, and Colt appealed to the Federal Circuit. We held that we did not have jurisdiction because the case did not arise under the patent law, and transferred the appeal to the Seventh Circuit.

The Seventh Circuit stated that the Federal Circuit was "clearly wrong," and transferred the appeal back to us. The Federal Circuit then decided the appeal "in the interests of justice," while protesting that we lacked jurisdiction. *Christianson*, 486 U.S. at 806–07. The Supreme Court then stepped in, and held that the case did not arise under the patent law, and that the appeal belonged in the Seventh Circuit. The Court observed that the phrase "arising under" the patent law "mask[ed] a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system." *Id.* at 808 n.2 (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 8 (1983)).

The Court defined "arising under" patent law as requiring:

> a well-pleaded complaint [that] establishe[s] either that federal patent law create[s] the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law was a necessary element of one of the well-pleaded claims.

*Id.* at 809. This standard has guided ensuing jurisdictional determinations.

As applied to the case at bar, it is not disputed that patent law is a "necessary element" of the antitrust claim, for without determination that a patent was obtained by fraud or inequitable conduct, there can be no antitrust violation. While "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories," *id.* at 810, Xitronix alleged a theory of antitrust violation based solely on patent law. And, as Xitronix states, its purpose is to invalidate the patent or render it unenforceable. However, the panel rules that in *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court changed Federal Circuit jurisdiction such that only the regional circuits now have jurisdiction over *Walker Process* appeals.

*Gunn* did not make the jurisdictional change ascribed to it. In *Gunn* the Court held that the appeal of a state law attorney malpractice case was properly in the state court, although the malpractice charge related to a patent issue. The Court observed that the patent had been invalidated ten years earlier, and described the patent aspect as "hypothetical" because whatever the attorney's malfeasance, there could be no rights in this long-dead patent. *Id.* at 261 ("No matter how the state courts resolve that hypothetical 'case within a case,' it will not change the real-world result of the prior federal patent litigation. Minton's patent will remain invalid.").

In this context of federal-state authority, *Gunn* discussed the requirements for federal "arising under" jurisdiction. The Court stated, "a case can 'arise under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.* at 257 (internal alteration omitted). Even where federal law does not create the cause of action, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

court without disrupting the federal-state balance approved by Congress." *Id.* at 258.

*Gunn* explained that the substantiality inquiry looks "to the importance of the issue to the federal system as a whole," *id.* at 260, and that when the claim "finds its origins in state rather than federal law," it must be "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. The Court's discussion of federal-state balance shows the ill fit between *Gunn* and the panel's application of *Gunn* to remove the jurisdiction of the Federal Circuit over the issues of fraud and inequitable conduct in patent prosecution when an antitrust violation is asserted in the complaint.

I agree that "[w]hile not perfectly translatable to the question before us, the[] guideposts [of *Gunn*] are helpful." *Madstad Eng'g, Inc. v. USPTO*, 756 F.3d 1366, 1370 (Fed. Cir. 2014). In *Madstad*, this court considered how adjudication of the constitutional challenge to the America Invents Act would affect the "balance [of] matters committed to the jurisdiction of this court and those committed to the regional circuits." *Id.* at 1371. The court stated that the "balance would be upset by placing jurisdiction over interpretations of the AIA and an assessment of its constitutional validity in the hands of any circuit other than this one." *Id.* The same applies here, as the panel upsets the balance established by Congress and moves to the regional circuits the issue of fraud or inequitable conduct in the PTO.

The case at bar is not a "hypothetical 'case within a case,'" as in *Gunn*, 568 U.S. at 261. The adjudication of fraud in procuring the patent in the PTO is a substantial issue of patent law. The panel states that *Gunn* requires moving the appeal to the Fifth Circuit because in the case at bar "[t]here is no dispute over the validity of claims." Transfer Order, 882 F.3d at 1078. This is a puzzling

statement, for that is the dispute: Xitronix states that a finding of fraud or inequitable conduct will "result in the '260 patent claims being rendered collaterally invalid and/or unenforceable." Reh'g Resp. Br. 9. The dispute is indeed over the validity and enforceability of the patent. The Court did not obliterate this jurisdiction of the Federal Circuit in *Gunn*'s resolution of state court malpractice jurisdiction.

I turn briefly to Federal Circuit precedent, for this court has traditionally resolved antitrust aspects of *Walker Process* appeals when raised in conjunction with patent prosecution in the PTO.

**The Panel Rejects Federal Circuit Precedent**

In *Nobelpharma AB v. Implant Innovations, Inc.*, the en banc court considered the question of whether Federal Circuit or regional circuit law should apply to the fraudulent "procuring or enforcing" aspect of a *Walker Process* claim. 141 F.3d 1059, 1068 (Fed. Cir. 1998).[4] We held that: "Whether conduct in the prosecution of a patent is sufficient to strip a patentee of its immunity from the antitrust laws is one of those issues that clearly involves our exclusive jurisdiction over patent cases." *Id.* at 1068. The en banc court further explained that "we hereby change our precedent and hold that whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law." *Id.*

The panel's ruling contradicts this en banc holding; this alone requires en banc attention, for precedent may

---

[4]   This section of *Nobelpharma* was "considered and decided unanimously by an *in banc* court." 141 F.3d 1068 n.5.

not be changed by a panel, *see South Corp. v. United States*, 690 F.2d 1368, 1370 n.2 (Fed. Cir. 1982) (en banc).

*In re Ciprofloxacin Hydrochloride Antitrust Litigation* was a transfer to the Federal Circuit from the Second Circuit, because "the determination of fraud before the PTO necessarily involves a substantial question of patent law." 544 F.3d 1323, 1330 & n.8 (Fed. Cir. 2008), *abrogated on other grounds by FTC v. Actavis*, 570 U.S. 136, 146–47, 160 (2013). Although there were also non-patent issues in this litigation, the Second Circuit and Federal Circuit agreed that the patent issues were substantial and that the action arose under the patent law, placing jurisdiction in the Federal Circuit.

The panel now announces that *Nobelpharma* and *Ciprofloxacin* were rendered "invalid" by *Gunn*. Transfer Order, 882 F.3d at 1079. *Gunn*, a malpractice case on the question of state-federal authority for attorney discipline, made no such dramatic holding pertaining to patent jurisdiction, even in dictum. The panel's discard of decades of precedent requires more than silent inference from unrelated situations.

Other rulings on our jurisdiction are in tension with the panel's decision. In *Jang v. Boston Scientific Corporation*, 767 F.3d 1334, 1337 (Fed. Cir. 2014), an action for breach of contract, this court was clear in its rejection of the concept that *Gunn* had broadly deprived the Federal Circuit of jurisdiction: "Here, by contrast [with *Gunn*], the disputed federal patent law issues presented by Jang's well-pleaded complaint are substantial and neither entirely backward-looking nor hypothetical. In addition to infringement, the court may be called upon to determine the extent to which validity is made relevant to the resolution of the breach-of-contract claim by the language of the contract itself." *Id.* at 1337. This court deemed patent validity a "substantial" issue of patent law and

explained that appeal of the breach of contract claim was properly to the Federal Circuit:

> Permitting regional circuits to adjudicate questions of patent validity, for example, could result in inconsistent judgments between a regional circuit and the Federal Circuit, resulting in serious uncertainty for parties facing similar infringement charges before district courts within that regional circuit. Maintaining Federal Circuit jurisdiction over such contractual disputes to avoid such conflicting rulings is important to "the federal system as a whole" and not merely "to the particular parties in the immediate suit."

*Id.* at 1338 (quoting *Gunn*, 568 U.S. at 260).

By further example, in *Vermont v. MPHJ Technology Investments, LLC*, this court observed that the substantial question of patent law present in a challenge to a Vermont consumer protection law was not like the malpractice issue in *Gunn*, a "'backward-looking . . . legal malpractice claim' that would be unlikely to have any 'preclusive effect' on future patent litigation." 803 F.3d 635, 646 (Fed. Cir. 2015) (quoting *Gunn*, 568 U.S. at 261, 263). Such distinction from *Gunn* also applies to the case at hand.

The panel's ruling directly contradicts the court's prior holdings. A contradictory ruling by the panel is improper, for "[t]his court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*." *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988). In the vast number of cases that have raised non-patent issues along with patent issues, no precedent of the Supreme Court or the Federal Circuit supports the panel's ruling on the panel's facts.

**The Panel Also Misconstrues Regional Circuit Jurisdictional Rulings**

The panel also cites decisions of other circuits to support transfer of this appeal to the Fifth Circuit. None of these cases, not their holdings nor their procedural postures nor their reasoning, supports this transfer.

*In re Lipitor Antitrust Litigation*, 855 F.3d 126 (3d Cir. 2017), dealt with the antitrust aspects of reverse-payments between the patent owner and generic producers of the patented drug. The panel states that the retention of jurisdiction in the Third Circuit supports removal of the instant appeal from Federal Circuit jurisdiction. Transfer Order, 882 F.3d at 1079. The *Lipitor* litigation raised several antitrust aspects unrelated to patent law. *See* 855 F.3d at 146 ("Here, plaintiffs could obtain relief on their section 2 monopolization claims by prevailing on an alternative, non-patent-law theory . . . ."). The Third Circuit distinguished this case from the Second Circuit's transfer to the Federal Circuit, stating: "But unlike the *Lipitor* and *Effexor* appeals before us, the appeal transferred from the Second Circuit to the Federal Circuit involved stand-alone *Walker Process* claims." *Id.* at 148 (referencing *In re Ciprofloxacin*). The Third Circuit observed that "*Actavis* teaches that reverse-payment antitrust claims do not present a question of patent law" and found patent law was not "necessary for relief on every theory of liability supporting an antitrust claim." *Id.* at 146 (citing 570 U.S. at 156–58). The court further stated that "courts must look to the monopolist's conduct taken as a whole rather than considering each aspect in isolation." *Id.* at 147 (quoting *LePage's Inc. v. 3M*, 324 F.3d 141, 162 (3d Cir. 2003)). Finding "patent-law related theories" to be but "aspects of an overall monopolistic scheme," the Third Circuit concluded that appellate jurisdiction was properly found in that court. *Id.* at 147, 152.

In contrast, here Xitronix presented no "alternative, non-patent-law theory" for its antitrust claim. *Lipitor*, 855 F.3d at 146. The only basis of Xitronix's claim was the asserted fraud or inequitable conduct in the PTO. The *Lipitor* ruling does not support divesting the Federal Circuit of jurisdiction over appeals where the potential antitrust issue necessarily turns on finding fraud or inequitable conduct in patent prosecution in the PTO.

The panel also cites a Fifth Circuit case in purported support of this jurisdictional change. In *USPPS, Ltd. v. Avery Dennison Corp.*, 541 F. App'x 386 (5th Cir. 2013) the issue was breach of fiduciary duty, where a patent applicant sued its licensee and attorneys on various grounds. There was no issue of fraud or inequitable conduct in prosecution of the patent application. The appeal bounced from the Fifth Circuit to the Federal Circuit to the Supreme Court, back to the Federal Circuit, and then back to the Fifth Circuit, which ruled that any patent aspects were "hypothetical" because resolution of the breach of fiduciary duty question would not affect the validity or enforceability of any patent. *Id.* at 389–90. Although the panel cites this case as an example of regional circuit jurisdiction of fraud in the PTO, there was no issue of fraud in the PTO; the asserted fraud was common law fraud based on contract and fiduciary relationships.

The panel further cites *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 720 F.3d 833 (11th Cir. 2013), for the proposition that the regional circuit had jurisdiction of the appeal of a "contract claim with an underlying patent infringement issue." Transfer Order, 882 F.3d at 1080. In that contract dispute, the court stated that the case was for breach of a license agreement, and that the question of infringement was not substantial because the patent had expired and "resolution of this issue is unlikely to impact any future constructions of claims." *MDS*, 720 F.3d at 842. The circuit construed the contract and

the licensed patents, considered the asserted breaches such as failure to pay the maintenance fees, and certified other contract issues to the Florida Supreme Court. The appeal before us is not such a complex case—the appeal turns on the issue of patent prosecution conduct in the PTO, for which appellate jurisdiction is in this court.

Another regional circuit case on which the panel relies is *Seed Co. Ltd. v. Westerman*, a malpractice case that was appealed to the D.C. Circuit. 832 F.3d 325 (D.C. Cir. 2016). The asserted malpractice was the attorney's failure to successfully prosecute an application before the PTO. The panel correctly states that the D.C. Circuit had "appellate jurisdiction because the case 'involve[d] no forward looking questions about any patent's validity, but instead solely concern[ed] whether unsuccessful patent applicants can recover against their attorneys.'" Transfer Order, 882 F.3d at 1079 (quoting *Seed*, 832 F.3d at 331). The Federal Circuit had several years earlier reviewed the patent questions in *Seed*, in an interference proceeding. As in *Gunn*, no patent rights were involved in or affected by this malpractice action. This case does not support the panel's holding that the Federal Circuit does not have jurisdiction over cases based on fraud or inequitable conduct in the PTO.

Until today, there has been stability in the jurisdictional path of *Walker Process* appeals. No precedent deprives the Federal Circuit of jurisdiction of appeals that turn on issues of fraud or inequitable conduct in patent prosecution. These issues are not only substantial, but because they determine patent enforceability and validity, they are fundamental.

To summarize why en banc review of this panel decision is appropriate and necessary:

1) The panel, at its own initiative, raised the question of our jurisdiction of *Walker Process* appeals. Although supplemental briefing was requested of the parties, the

ramifications of this jurisdictional change were not exposed in public debate.

2) Precedent is contrary to the panel's rejection of this appeal.  Neither *Gunn* nor any other precedent supports the panel's ruling that claims turning on patent invalidity and unenforceability due to fraud or inequitable conduct in patent prosecution do not "arise under" the patent law.

3) The reason for formation of the Federal Circuit as a national court was to stabilize the patent law and provide uniformity throughout the nation.  Patent prosecution is a complex and specialized interaction between inventors and examiners.  This ruling will require each regional circuit to review patent prosecution in the PTO, creating regional precedent and forum-shopping.

4) Appellate review of cases that arise under the patent law is our assignment and our obligation.  The Supreme Court did not silently divest this court of the jurisdiction that was established in 1982.

If the court now wishes to remove itself from jurisdiction of cases that may involve issues in addition to patent issues, we should make this change en banc.  From the court's denial of en banc rehearing, I respectfully dissent.